# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Nicole Park, | : | |
|           Appellant | : | |
| | : | |
|       v. | : | No. 522 C.D. 2017 |
| | : | Argued: December 7, 2017 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                HONORABLE ANNE E. COVEY, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**                **FILED: January 19, 2018**

        Nicole Park (Licensee) appeals from an order of the Court of Common Pleas of York County[1] (trial court) that denied her license suspension appeal and reinstated the Department of Transportation, Bureau of Driver Licensing's (DOT) one-year suspension of her operating privilege under 75 Pa. C.S. §1547(b)(1)(i) for refusing to submit to a chemical test of her blood after being arrested for driving under the influence of alcohol (DUI), a violation of 75 Pa. C.S. §3802. Licensee presents four issues for our review, including whether the trial court erred or abused its discretion in denying Licensee's appeal where she could not make a knowing and conscious refusal because of the arresting officer's confusing and changing instructions. For the reasons that follow, we affirm.

---

[1] The Honorable Lawrence F. Clark, Jr., Senior Judge, presided.

# I. Background

On September 10, 2016, while on routine patrol on southbound Interstate 83 in Conewago Township, York County, Pennsylvania State Trooper Raymond R. Rutter (Arresting Officer) observed a Ford Escape in front of him weaving in and out of the right lane. The vehicle touched the fog line six times. Arresting Officer clocked the vehicle at 76 miles per hour (mph) in a 65 mph zone. Arresting Officer followed the vehicle and initiated a traffic stop. After a quarter of a mile, the vehicle stopped.

Arresting Officer then made contact with the driver, who identified herself as Licensee. Arresting Officer noticed Licensee had bloodshot and glassy eyes and that her speech was slurred. The Officer also noticed a strong odor of alcoholic beverage emanating from the vehicle. Arresting Officer asked Licensee to exit the vehicle and perform field sobriety tests. Licensee complied with the officer's requests, including his request for a preliminary or pre-arrest breath test (PBT). Licensee had trouble with her footing while exiting the vehicle and performing the tests. Licensee's PBT indicated a blood alcohol content of .129. Arresting Officer believed the rating would have been higher if Licensee would have provided a full breath. The Officer then arrested Licensee for DUI and placed her in his patrol vehicle.

Once they were both in the vehicle, Arresting Officer advised Licensee that she would be asked to submit to a chemical test of her blood. Licensee advised Arresting Officer that she was going to refuse the test. Arresting Officer then read DOT's Form DL-26 to Licensee, which stated that a refusal to submit to chemical

testing will result in a one-year suspension of her driving privilege. After reading Licensee the DL-26 warnings, Arresting Officer then asked Licensee to submit to the chemical test. Licensee again responded no.

Arresting Officer then transported Licensee to the booking center in York. On the way to the booking center, Arresting Officer twice asked Licensee if she realized she was refusing testing. Licensee responded in the affirmative both times. Arresting Officer then asked Licensee a third time if she was going to refuse testing. Licensee replied: "Yes, I am." Tr. Ct. H'rg, Notes of Testimony (N.T.), 3/29/17, at 10-11. Arresting Officer then released Licensee to the officials at the booking center.

At the appeal hearing, Arresting Officer testified on cross-examination that Licensee repeatedly expressed concerns about how being arrested for DUI and submitting to chemical testing would affect her job as a teacher. See N.T. at 7, 15. Arresting Officer further testified he could not recall whether he told Licensee that she would have time to consider whether to consent to the blood test on the way to the booking center. Id. at 15-16. Nonetheless, Arresting Officer recalled that Licensee advised him that she would not submit to chemical testing and that he then called the booking center. Id.

The trial court also played Arresting Officer's dash-cam video. After watching the video, Arresting Officer confirmed he told Licensee she would have time to think about taking the blood test on the way to the booking center. N.T. at 21-22. Arresting Officer further testified he was the only one to sign the DL-26

3

Form; Licensee did not sign it. See Ex. D-1 (attached to Appellee's brief). To that end, Licensee produced a second DL-26 Form also designated to be used for blood tests. See Ex. D-2, DL-26B (attached to Appellee's brief). On both forms, Arresting Officer signed the affidavit indicating Licensee was arrested for DUI and given the implied consent warnings and that she refused the blood test.

On re-direct examination, Arresting Officer confirmed that he again read Licensee the DL-26 warnings on the way to the booking center, and that Licensee never agreed to take the test. N.T. at 28. The vehicle audio recorder confirmed the conversation. Tr. Ct., Slip Op., 7/7/17, at 4.

In addition, Arresting Officer admitted that he turned his microphone off for 35 to 40 seconds during a phone conversation with his superior officer regarding the new law governing blood test refusals following the U.S. Supreme Court's decision in Birchfield v. North Dakota, ___ U.S. ___, 136 S. Ct. 2160 (2016), which held that a state cannot criminally penalize a motorist for refusing to submit to a warrantless request for a blood test after being arrested for DUI. Arresting Officer testified that he inquired as to what steps he needed to take when a refusal occurred. N.T. at 26-27. Arresting Officer testified he did not believe the conversation with his supervisor was of evidentiary value. N.T. at 27.

Licensee also testified at the hearing. She stated she had never been in the backseat of a patrol car or in handcuffs before, and she became very anxious. N.T. at 33. Licensee asked Arresting Officer what was going to happen to her. Id. He replied that they would go to the booking center, she would take a blood test and

4

then go to jail. Id. Licensee then asked if she would have to take a blood test and Arresting Officer responded: "You can refuse if you want to." Id. at 34. Although Arresting Officer shortly thereafter requested that she submit to a blood test, Licensee testified: "I had already established in my brain that that [sic] was an option to not have to give the blood test." Id.

Licensee further testified that she lost her composure, "kind of tuned out" and "kind of slumped in the back in the car." Id. Licensee could not remember being read the DL-26 Form or refusing the blood test. Id. She further testified that she would not have refused the blood test had she known the punitive consequences. Id. at 34-35. Licensee did recall Arresting Officer saying "Excellent" when she gave her answer. Id. at 35. Licensee interpreted "Excellent" as meaning that she was compliant with the officer's requests. Id.

Nonetheless, on cross-examination, Licensee admitted that the dash-cam video (Ex. D-3) showed Arresting Officer reading her the DL-26 warnings. Id. at 35-36. However, Licensee testified she lost her composure during the car ride and "wasn't really listening." Id. at 36-37. However, when asked if she ever told Arresting Officer that she wanted to take the blood test, Licensee answered: "No." Id. at 37-38.

Licensee's attorney then argued that the court should consider Licensee's confused state of mind resulting in part from Arresting Officer's statement that she had the option of refusing the blood test. N.T. at 39-41. Licensee thus believed she could refuse the blood test without repercussions. Licensee also

5

pointed out that she never signed the DL-26 Form, indicating that it was never offered her. Id.

However, the trial court, in summarizing, observed that Arresting Officer's dash-cam video and audio made it clear that Arresting Officer read the DL-26 Form to Licensee and that she refused to consent to chemical testing. N.T. at 43. Further, although Arresting Officer used the word "Excellent," it amounted to a comment without any meaning. Rather, the trial court reasoned, the operative words here were the "no" spoken by Licensee and her admission in court that she never said "yes" to Arresting Officer's request that she consent to chemical testing. Id. at 43-44. Consequently, the trial court dismissed Licensee's appeal. N.T. at 44. Licensee appeals.[2]

## II. Discussion
### A. Knowing and Conscious Refusal
### 1. Argument

Licensee first contends the trial court erred or abused its discretion in denying Licensee's appeal where she could not make a knowing and conscious refusal of chemical testing. Licensee asserts that based on Arresting Officer's confusing and changing instructions, she could not make a knowing and conscious refusal of chemical testing. Her argument is as follows. To sustain a suspension of

---

[2] Our review in a license suspension is limited to determining whether the trial court's necessary findings of fact were supported by substantial evidence and whether the trial court committed an error of law or otherwise abused its discretion. Dep't of Transp., Bureau of Traffic Safety v. O'Connell, 555 A.2d 873 (Pa. 1989); Marchese v. Commonwealth, 169 A.3d 733 (Pa. Cmwlth. 2017).

a licensee's operating privilege under Pennsylvania's Implied Consent law, 75 Pa. C.S. §1547(a) and (b), DOT must establish the licensee: (1) was arrested for DUI by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance; (2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and, (4) was warned by the officer that her license will be suspended if she refused to submit to chemical testing. Regula v. Dep't of Transp., Bureau of Driver Licensing, 146 A.3d 836 (Pa. Cmwlth. 2016). Once DOT satisfies this burden, the burden shifts to the licensee to prove she was physically incapable of performing the test or that her refusal was not knowing and conscious. Sitoski v. Dep't of Transp., Bureau of Driver Licensing, 11 A.3d 12 (Pa. Cmwlth. 2010).

Here, Licensee contends that although she may have been under the influence of alcohol, she became confused by Arresting Officer's multiple and conflicting statements regarding whether she must submit to a blood test. Licensee asserts Arresting Officer asked her if she thought she would be willing to take a blood test and told her that is something she should think about on the way to the booking center. See N.T. at 21-22.

In short, Licensee argues, prior to reading her the DL-26 Form, Arresting Officer gave her conflicting statements about the procedure involving the blood test. During this time, Licensee asked Arresting Officer if she had to take a blood test, and he told her that she could refuse it if she wanted to do so. N.T. at 33-34. Licensee stated that this established in her mind that she was compliant with Arresting Officer's requests and that she did not need to take the blood test. Id. at

7

34-37. Licensee also testified she has a medical history of having a hard time giving blood. Id.

In support of her position that she was too confused by Arresting Officer to make a knowing and conscious refusal, Licensee cites McDonald v. Department of Transportation, Bureau of Driver Licensing 708 A.2d 154 (Pa. Cmwlth. 1998). In McDonald, this Court affirmed a trial court's decision sustaining a license suspension appeal where the licensee initially had questions regarding her right to call an attorney and the difference between criminal and civil proceedings. The questions took about 10 to 15 minutes. After the police officer answered the licensee's questions, the licensee attempted to sign the consent form but the officer grabbed it out of her hands and registered the licensee's response as a refusal.

Similar to McDonald, Licensee argues that she delayed her decision because of confusing and changing statements from Arresting Officer regarding her need to submit to the blood test. Here, the ramifications of not taking the blood test were never made clear to Licensee. Therefore, Licensee asserts, she could not make a knowing and conscious refusal of chemical testing.

Licensee further argues there were problems with the DL-26 Forms submitted into evidence. First, Licensee asserts Arresting Officer did not properly fill out the forms. On one form, Arresting Officer left blank the space to write in the type of test (breath or blood). In addition, Arresting Officer did not fill out the forms completely. Arresting Officer failed to sign the line which indicates that he read the

8

consent warnings to Licensee and gave her an opportunity to submit to the chemical test.

## 2. Analysis

The question of whether a licensee refuses to submit to a chemical test is a legal one subject to plenary review on appeal. Boseman v. Dep't of Transp., Bureau of Driver Licensing, 157 A.3d 10 (Pa. Cmwlth.), appeal denied, 170 A.3d 996 (Pa. 2017). Once a police officer provides the implied consent warnings to a motorist, the officer has done all that is legally required to ensure the motorist is fully advised of the consequences of her failure to submit to chemical testing. Dep't of Transp., Bureau of Driver Licensing v. Scott, 684 A.2d 539 (Pa. 1996). All that is required is that the officer read the warnings to the licensee and that the licensee be given a meaningful opportunity to comply with the Implied Consent Law. Sitoski. Anything substantially less than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal. Id. Further, a licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal. Id.

To that end, a reading of the DL-26 Form sufficiently apprises the driver, either hearing or reading it, that if she refuses to submit to the chemical test, her operating privileges will be suspended. Quigley v. Dep't of Transp., Bureau of Driver Licensing, 965 A.2d 349 (Pa. Cmwlth. 2009). The fact that a particular motorist hearing the warning may question its interpretation is not a sufficient basis upon which to argue that the refusal was not knowing and conscious. Id. Notably, our Supreme Court recognizes that a licensee's subjective beliefs do not provide a sufficient justification for refusing to comply with the Implied Consent Law. Scott.

9

In short, an officer's sole duty is to inform the motorist of the implied consent warnings. Martinovic v. Dep't of Transp., Bureau of Driver Licensing, 881 A.2d 30 (Pa. Cmwlth. 2005). As noted above, other than reading the warnings, an officer need only provide a licensee with a meaningful opportunity to comply with the Implied Consent Law. Sitoski. An officer has no duty to answer a licensee's questions. McKenna v. Dep't of Transp., Bureau of Driver Licensing, 72 A.3d 294 (Pa. Cmwlth. 2013). In particular, officers do not have an obligation to make sure that licensees understand the warnings or the consequences of a refusal. Martinovic. Repeated questioning may also be deemed a refusal by conduct. Keenan v. Dep't of Transp., Bureau of Driver Licensing, 657 A.2d 134 (Pa. Cmwlth. 1995).

Further, a motorist's self-serving testimony that she was incapable of providing a knowing and conscious refusal of a chemical test is insufficient to meet her burden of proving incapacity. Kollar v. Dep't of Transp., Bureau of Driver Licensing, 7 A.3d 336 (Pa. Cmwlth. 2010). Rather, a licensee's incapacity defense must be supported by competent medical evidence where she suffers from no obvious disability. Id. The medical expert must rule out alcohol as a contributing factor in the motorist's inability to make a knowing and conscious refusal. Id. Thus, if a motorist's inability to make a knowing and conscious refusal of chemical testing is caused, in whole or in part, by the voluntary consumption of alcohol, the motorist's affirmative defense fails. Id.

Here, Licensee asserts that because of Arresting Officer's confusing and conflicting statements regarding the implied consent warnings and whether she

could refuse a blood test, she was so confused that she could not make a knowing and conscious refusal of chemical testing. Licensee's argument fails for a number of reasons.

First, Licensee admitted that Arresting Officer's dash-cam video shows that he read her the DL-26 Forms. N.T. at 35-36. Nevertheless, Licensee asserts she asked Arresting Officer, during the period of time when the sound went out on the video, if she had to take the blood test, and he told her that she did not have to take the test. Because Licensee thought she did not need to take the blood test, she decided not to take the test. Id. at 34-35.

In addition, Licensee argues she was confused because Arresting Officer told her that he was taking her to the booking center, but he did not immediately do so. Further, Arresting Officer told her that she had time to consider whether to take the blood test on the way to the booking center.

Even assuming, however, that Arresting Officer told Licensee she did not have to take the blood test, this is not a misstatement of the law. Any person arrested for DUI has a right to refuse to submit to chemical testing. 75 Pa. C.S. §1547(b)(1); Commonwealth v. Myers 164 A.3d 1162 (Pa. 2017). Of course, the civil consequence under the Implied Consent Law for a refusal of chemical testing is a suspension of driving privileges. These warnings are included in the DL-26 Form.

11

After the conversation about going to the booking center, Arresting Officer read Licensee the DL-26 implied consent warnings. At this point, any subjective confusion Licensee may have experienced was cured as a matter of law. Scott; Sitoski; Martinovic. In short, Arresting Officer did all that he was legally required to do to ensure that Licensee was fully advised of the consequences of refusing to submit to chemical testing. Scott; Sitoski. Arresting Officer had no duty to make sure that Licensee understood the consequences of refusing to take a chemical test following a DUI arrest. The language in the DL-26 Forms is sufficient as a matter of law to meet the warning requirement in the Implied Consent Law. Yourick v. Dep't of Transp., Bureau of Driver Licensing 965 A.2d 341 (Pa. Cmwlth. 2009) (en banc). As we noted in Yourick, it is unreasonable for a licensee to believe that there would be no repercussions for refusing chemical testing after being arrested for DUI.

In addition, Licensee's reliance on McDonald is misplaced. In McDonald, the trial court found that the licensee attempted to consent to chemical testing after the officer explained the civil nature of the proceeding and that she had no right to speak to an attorney before deciding whether to submit to testing. Unlike McDonald, Licensee admitted that she never told Arresting Officer that she would take the blood test. See N.T. at 37-38.

Further, Licensee admitted to drinking prior to her DUI arrest and made no evidentiary attempt to establish that her voluntary intoxication played no role in her purported inability to a make a knowing and conscious refusal to submit to chemical testing. Licensee's failure to do so also constitutes grounds for the trial

12

court's determination that Licensee did not meet her burden of proving she was incapable of making a knowing and conscious decision to refuse chemical testing. Kollar.

For the above reasons, we discern no error or abuse of discretion in the trial court's determination that Licensee did not meet her burden of proving she was incapable of making a knowing and conscious decision to refuse chemical testing. Scott; Sitoski; Kollar.

## B. Credibility of Arresting Officer

## 1. Argument

Licensee next argues there are various reasons why the trial court abused its discretion in finding Arresting Officer's testimony credible. First, Arresting Officer removed 35-40 seconds of audio from the dash-cam video by altering the sound so it would not be available. N.T. at 27. Only after being questioned at the hearing did Arresting Officer admit that he removed the audio. Id. The trial court should have considered this as tampering with the evidence.

What is more, Arresting Officer admitted he intentionally removed the audio. Although Arresting Officer claims the audio reflected a conversation with his supervisor and had no evidentiary value, Licensee asserts if the audio was available it would reveal that Arresting Officer was providing Licensee with confusing and contradictory statements regarding the officer's request for a blood test. Because of Arresting Officer's confusing and contradictory statements, Licensee testified she was under the impression she did not have to take the test.

Second, at the hearing Arresting Officer did not recall many of the statements he made on the video despite having stated that he reviewed the video that morning. Only after the video played in court did Arresting Officer acknowledge making these statements.

Third, Arresting Officer used two different implied consent forms. One is identified as DL-26 (5-16), and the other is identified as DL-26B (6-16). Although Arresting Officer testified one form had been destroyed in the mail, Licensee obtained both forms in criminal discovery. Licensee contends it is concerning why Arresting Officer chose to create a new form and submit it as the original.

Fourth, the two forms are different. In Exhibit D-1, there is a gap between the third and fourth paragraphs. In Exhibit D-2, there is no gap. In Exhibit D-1, there is a blank space to fill in a chemical test. In Exhibit D-2, that sentence does not exist.

Fifth, Arresting Officer failed to sign the certification on either form that he read the DL-26 to Licensee and gave her an opportunity to submit to testing. Rather, he signed the third line saying that Licensee refused to sign after being advised of the implied consent warnings.

Based on the intentional altering of the audio on the dash-cam video, which may have removed exculpatory evidence, and the two versions of the DL-26,

14

which were not properly completed, Licensee requests that we hold that the trial court erred or abused its discretion in finding Arresting Officer's testimony credible.

## 2. Analysis

In its opinion in support of its order dismissing Licensee's suspension appeal, the trial court explained that it found Arresting Officer's testimony to be entirely credible, including his explanation for turning off the audio. Tr. Ct., Slip Op., 7/7/17, at 6. Arresting Officer explained that he turned off the audio while talking to his supervisor about how to proceed with the warnings to Licensee following her refusal. Id.

It is well settled that the trial court's credibility determinations in a license suspension appeal will not be second-guessed on appeal. O'Connell; Reinhart v. Dep't of Transp., Bureau of Driver Licensing, 954 A.2d 761 (Pa. Cmwlth. 2008). Determinations as to the credibility of witnesses and the weight assigned to the evidence are matters solely within the province of the trial court as fact-finder. Reinhart. Conflicts in the evidence are for the trial court to resolve and are thus improper questions for appellate review. Id. Therefore, we must determine whether a licensee refused chemical testing based on the facts found by the trial court rather than those the appellant prefers. Id.

Here, we decline Licensee's invitation to reweigh the evidence and find Arresting Officer's testimony not credible. As discussed above, Arresting Officer testified that he turned off the audio while talking to his supervisor about how to proceed with the warnings to Licensee. N.T. at 27. He did not believe that his

15

conversation with his supervisor had any evidentiary value. Id. The trial court accepted this explanation as credible. As such, we will not disturb the court's findings on appeal. O'Connell; Reinhart.

With regard to the DL-26 Forms, Arresting Officer explained that the difference in the two forms resulted from the U.S. Supreme Court's decision in Birchfield. N.T. at 9. On both forms, which specifically stated they are used for blood tests only, Arresting Officer signed the affidavit indicating that he placed Licensee under arrest for DUI, he requested that she submit to a blood test as authorized by 75 Pa. C.S. §1547, that he read her the implied consent warnings, and she refused to submit to a blood test after having been read the warnings. Both DL-26 Forms were admitted into evidence without objection.

Consequently, we reject Licensee's contention that the trial court erred or abused its discretion in finding Arresting Officer's testimony credible despite the alleged alteration of the dash-cam audio and Arresting Officer's use of multiple DL-26 Forms. O'Connell; Reinhart.

### C. **Birchfield** Analysis
### 1. Argument

Licensee next contends that Arresting Officer's request for a blood test without a warrant violated the U.S. Supreme Court's decision in Birchfield. To that end, Licensee acknowledges our holding in Boseman that the U.S. Supreme Court's decision in Birchfield does not apply to civil license suspensions and that the requirement to obtain a warrant for a blood test applied only in criminal cases.

16

Although Licensee concedes that refusing a blood test is not an offense included in the Crimes Code, 18 Pa. C.S. §§101-9402, she asserts that the restrictions and sanctions for refusing chemical testing are very similar to those imposed in a first offense DUI conviction.

Further, Licensee contends, there is a significant pending change in the license renewal fee which is tied to whether the licensee has any DUIs or license suspensions. Licensee posits that the increased license renewal fees for those with refusal suspensions will be similar to criminal sanctions. Therefore, Licensee argues, refusals to submit to chemical testing should be treated as a crime for purposes of a Birchfield analysis. As such, Licensee requests that this Court consider applying Birchfield to refusal cases under the Implied Consent Law.

In response, DOT contends Licensee waived her Birchfield argument by not raising it before the trial court. To that end, DOT points out that Boseman was decided 12 days prior to Licensee's appeal hearing. Therefore, DOT asserts Licensee waived her Birchfield argument. Campbell v. Dep't of Transp., Bureau of Driver Licensing, 86 A.3d 344 (Pa. Cmwlth. 2014).

Alternatively, DOT argues there is no merit to Licensee's argument. Birchfield addressed the constitutionality of a state statute that made it a crime to refuse a warrantless blood test after being arrested for DUI. Although Birchfield may impact criminal DUI cases in Pennsylvania, we note our repeated holdings that Birchfield does not apply to civil license suspensions under the Implied Consent Law. Marchese v. Commonwealth, 169 A.3d 733 (Pa. Cmwlth. 2017); Boseman.

17

## 2. Analysis

A review of the hearing transcript before the trial court, including the arguments presented, reveals no mention of Birchfield or Boseman by Licensee or her counsel. In Campbell, we determined that the licensee waived a challenge to the validity of the implied consent warning given by not raising that issue during the appeal hearing. We also rejected the licensee's argument that she preserved the issue under the Pennsylvania Rules of Criminal Procedure by raising it in her statement of errors complained of on appeal. Noting a license suspension appeal is a civil proceeding, we determined that the Rules of Criminal Procedure were inapplicable. Campbell is directly on point here. Therefore, we hold that Licensee waived her Birchfield challenge.

Alternatively, we note that we have previously addressed and rejected the argument that Birchfield should apply to refusals of chemical testing under Pennsylvania's Implied Consent Law. Birchfield, by its own language, applies only to the imposition of criminal penalties for refusing to submit to a blood test. A driver's license suspension is civil, not a criminal penalty. Marchese; Boseman. In short, it is not a crime to refuse chemical testing under 75 Pa. C.S. §1547(b)(1). Therefore, we decline to revisit this issue based on anticipated increases in license renewal fees which would be contingent upon a licensee's history of civil license suspensions.

### D. Preliminary or Pre-Arrest Breath Test
### 1. Argument

In her last argument, Licensee contends that her preliminary or pre-arrest breath test satisfied the protocol for chemical testing under 75 Pa. C.S. §1547. In support of her position, Licensee cites 75 Pa. C.S. §1547(c), which provides:

> **(c) Test results admissible in evidence**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3802 or any violation of this title arising out of the same action, the amount of the alcohol or controlled substance in the defendants' blood, as shown by chemical testing of the person's breath or blood, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.

Licensee asserts that the DL-26 Forms specifically talk about a breath or blood test being offered. Licensee acknowledges that PBTs are not typically admissible to show a motorist's blood alcohol level. However, given the confusing statements by Arresting Officer in this case, Licensee argues that the use of the PBT to counter the refusal is appropriate. Therefore, Licensee maintains the trial court erred in not allowing the PBT to be used in this case.

## 2. Analysis

We disagree. The sole purpose of a pre-arrest breath test, authorized by 75 Pa. C.S. §1547(k) for an individual suspected of DUI, is to assist the investigating officer in determining whether the driver should be placed under arrest. Ryan v. Dep't of Transp., Bureau of Driver Licensing 823 A.2d 1101 (Pa. Cmwlth. 2003). The PBT serves the same purpose as other more familiar field sobriety tests such as walking a straight line. Id. Refusal to perform a pre-arrest breath test cannot be the basis for a license suspension. Id.

19

The second type of chemical testing, which is specified by the Implied Consent Law, 75 Pa. C.S. §1547(a), is a post-arrest test to determine the alcoholic content of the driver's breath or blood. Obviously, refusal to submit to this testing can result in a civil license suspension under the Implied Consent Law.

In Ryan, we noted that in Appeal of Attleberger, 583 A.2d 24 (Pa. Cmwlth. 1990), a licensee argued that his performance of the pre-arrest breath test should relieve him from having to submit to a post-arrest blood test under the Implied Consent Law. This Court, sitting en banc in Attleberger, rejected the licensee's argument that he deserved protection from the confusion resulting from being asked by the police to submit to a blood test after having complied with their previous request for a pre-arrest breath test.

Similarly, in Ryan the licensee submitted to a pre-arrest breath test and was later transported to a hospital for a blood test under the Implied Consent Law. The licensee refused to submit to the blood test on the ground that she already performed a PBT. Reversing the trial court's order sustaining the licensee's appeal based on Attleberger, we noted that any confusion over the licensee's responsibility to submit to second type of test arose not from statements made by the police officer, but solely from the licensee's self-induced confusion over what the law is or should be.

Ryan is controlling here. Our decision in Ryan was later confirmed in Sitoski, where this Court again rejected the argument that a licensee's subjective

20

confusion based on his completion of a PBT established that his refusal of chemical testing was not knowing or conscious.

Consequently, we discern no error in the trial court's conclusion that DOT was not obligated to accept Licensee's PBT results as an alternative to a chemical test of her blood.

### III. Conclusion

For the above reasons, we discern no error or abuse of discretion by the trial court in denying Licensee's statutory license suspension appeal. Accordingly, we affirm. Further, we grant DOT's request to reinstate the one-year suspension of Licensee's operating privilege under 75 Pa. C.S. §1547(b)(1)(i).[3]

ROBERT SIMPSON, Judge

---

[3] By order dated May 18, 2017, the trial court granted a supersedeas of the suspension of Licensee's operating privileges pending the disposition of Licensee's appeal to this Court. See Certified Record, Item #6.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nicole Park,                           :
              Appellant      :
                               :
             v.                 :  No. 522 C.D. 2017
                               :
Commonwealth of Pennsylvania,          :
Department of Transportation,          :
Bureau of Driver Licensing             :

## O R D E R

      **AND NOW**, this 19th day of January, 2018, for the reasons stated in the foregoing opinion, the order of the Court of Common Pleas of York County is **AFFIRMED**.  Further, the Department of Transportation, Bureau of Driver Licensing, is hereby directed to **REINSTATE** the one-year suspension of Nicole Park's operating privilege under 75 Pa. C.S. §1547(b)(1)(i).

<br>

                                    _____

                                    ROBERT SIMPSON, Judge