# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amischa Moody,                              :
                  Appellant          :
                                       :
                 v.                       :     No. 855 C.D. 2020
                                       :     Submitted: August 13, 2021
Commonwealth of Pennsylvania,              :
Department of Transportation,              :
Bureau of Driver Licensing                 :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge[1]
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE LEAVITT                        FILED:  March 22, 2022

          Amischa Moody (Licensee) appeals an order of the Court of Common Pleas of York County (trial court) that dismissed her appeal of a one-year suspension of her operating privilege by the Department of Transportation, Bureau of Driver Licensing (PennDOT), for a reported refusal to submit to chemical testing, in violation of Section 1547(b) of the Vehicle Code, 75 Pa. C.S. §1547(b).  Upon hearing the evidence, the trial court sustained Licensee's appeal, finding that she did not refuse consent.  After PennDOT filed a motion for reconsideration, the trial court vacated its order and reinstated PennDOT's suspension of Licensee's operating privilege.  On appeal, Licensee asserts that the trial court erred because PennDOT did not prove that she refused a blood test or, in the alternative, that she was given a meaningful opportunity to give consent.

---

[1] This matter was assigned to the panel before January 3, 2022, when President Judge Emerita Leavitt became a senior judge on the Court.

The facts were established in the hearing that was conducted by the trial court on June 24, 2020. Both the arresting officer and Licensee testified.

Officer Kyle Forry of the Northern York County Regional Police Department testified about his arrest of Licensee on November 17, 2019. He explained that he received a dispatch at 3:03 a.m. about reckless driving and located the reported vehicle parked in front of a residence with its lights on and the engine running. Officer Forry woke Licensee, the sole occupant of the vehicle, and found that she smelled of alcohol. He requested her to leave the vehicle and then conducted standardized field sobriety tests. Concluding that she failed them, he transported Licensee in handcuffs to Central Booking, where she was immediately taken to a phlebotomist. Officer Forry read the Implied Consent Warning Form, *i.e.*, the DL-26 Form, and asked Licensee if she would consent to a blood test. After a few seconds, Officer Forry repeated the question. She responded that she needed time to think. Officer Forry testified that "I allowed her more time to think," which he described as several more seconds. Notes of Testimony, 6/24/2020, at 11-12 (N.T. __); Reproduced Record at 24-25 (R.R. __). When Officer Forry again asked Licensee to submit to a blood draw, she responded that she wished to read the form. N.T. 12; R.R. 25. After giving Licensee time to read the form, Officer Forry asked Licensee, for the fourth time, whether she would submit to the blood draw. She responded, according to Officer Forry, that she would "take the fine" and "was not going to give [him] blood." N.T. 12; R.R. 25.

Officer Forry testified that he then signed the DL-26 Form in two places. The first signature confirmed that he read the form to Licensee. The second signature confirmed that Licensee refused to sign the DL-26 Form or to consent to

2

chemical testing. Officer Forry estimated that the entire exchange, from their arrival at Central Booking to his signature on the DL-26 Form, took three to five minutes.

On cross-examination, Officer Forry acknowledged that Licensee did not actually say that she would not give blood. Rather, he construed her statement that she "would take the fine" as conveying that message. N.T. 12; R.R. 25. He also agreed that Licensee had asked him questions about the DL-26 Form, but he could not recall their content. He denied that Licensee offered to give blood at any point in the process. N.T. 17; R.R. 30. However, after listening to a recording from Licensee's preliminary hearing, Officer Forry testified as follows:

> I apologize. I did leave the room . . . or, I did attempt to walk out, and she did, as I was walking out, attempt to say she would take the test.

N.T. 22; R.R. 35.

Upon questioning by the trial court, Officer Forry testified that Licensee requested more time to look at the DL-26 Form. He confirmed that as he started to leave the room, Licensee stated that she would take the test. Finally, he confirmed that the DL-26 Form had not been filled out when she gave her consent.

Licensee then testified. She agreed that the entire process at Central Booking took approximately three to five minutes. She testified that she had questions and was frustrated by Officer Forry's brief responses, which did not answer her questions. Instead, he just kept repeating his request for consent. Licensee testified that she never refused to submit to a blood test. As for her statement that she would pay the fine, Licensee explained that at Central Booking a sheriff told her that there was a warrant for her arrest because of an unpaid ticket for parking next to a fire hydrant. That same individual advised Licensee that she would not be released until she paid this fine. This left her "confused . . . very confused."

3

N.T. 27; R.R. 40. Licensee did not recall whether she was asked to sign the DL-26 Form, but she did remember that in response to her consent to the blood test, Officer Forry stated that "he didn't want to play [her] games." N.T. 29; R.R. 42.

On cross-examination, Licensee stated that after each of Officer Forry's requests for consent, she asked questions but received no response. She insisted that she did not refuse to take the blood test. The trial court then engaged in the following exchange with Licensee:

> Court:     When did you say you would take the test?
>
> [Licensee]:   I mean, he said he was going to take that as a refusal, and then I said I'll give you blood. Then he said he wasn't going to play my games. I wasn't playing games. I wasn't being facetious or anything.

N.T. 30; R.R. 43.

The trial court sustained Licensee's appeal. Crediting Officer Forry's testimony, the trial court nevertheless found that Licensee did not refuse consent. Rather, "[s]he said let me think about that." N.T. 34; R.R. 47. The trial court observed that Licensee's response was "not unequivocal and she did in the final analysis agree." N.T. 35; R.R. 48.

Thereafter, PennDOT filed a motion for reconsideration. It argued that anything less than an immediate assent constitutes a refusal under Section 1547 of the Vehicle Code, 75 Pa. C.S. §1547. The trial court vacated its earlier order, dismissed Licensee's appeal, and reinstated her license suspension. Licensee then appealed to this Court.

On appeal,[2] Licensee raises two issues. First, she contends that the trial court erred in reversing its decision to sustain Licensee's appeal in light of its finding

---

[2] "Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an

4

that she did not refuse consent. Second, in the alternative, she contends that the trial court erred because Licensee was not provided a meaningful opportunity to consent to chemical testing because she was not asked to sign the DL-26 Form.

We begin with a review of the law. Section 1547(b) of the Vehicle Code states, in relevant part, as follows:

**(b) Civil penalties for refusal. --**

> (1) If any person placed under arrest for a violation of section 3802 [(relating to driving under the influence of alcohol or a controlled substance)] is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

> > (i) Except as set forth in subparagraph (ii), for a period of 12 months.

> > ***

> (2) It shall be the duty of the police officer to inform the person that:

> > (i) the person's operating privilege will be suspended upon refusal to submit to chemical testing and the person will be subject to a restoration fee of up to $2,000; and

> > (ii) if the person refuses to submit to chemical breath testing, upon conviction or plea for violating section 3802(a)(1), the person will be subject to the penalties provided in section 3904(c) (relating to penalties).

75 Pa. C.S. §1547(b). This Court has construed the requirements of Section 1547(b) as follows:

---

error of law or an abuse of discretion." *Negovan v. Department of Transportation, Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

5

A licensee need not explicitly refuse to submit to testing but may demonstrate through his overall conduct a general unwillingness to submit to testing. . . . Officers are not required to "spend effort either cajoling the licensee or spend time waiting to see if the licensee will ultimately change his mind." *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 641, n.7 (Pa. Cmwlth. 2002) (punctuation omitted) (quoting *King v. Department of Transportation, Bureau of Driver Licensing*, 828 A.2d 1, 5 n.8 (Pa. Cmwlth. [2002]))[.] . . . Whether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law fully reviewable by this Court.

*Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (holding that licensee's demand that handcuffs be removed as a condition of consenting to blood test, after two express refusals, constituted a refusal to consent to blood test) (internal citations omitted).

In her first issue, Licensee contends that her "overall conduct" did not demonstrate a "general unwillingness" to submit to a blood test. *Id.* Indeed, Licensee expressly agreed to take the test and did so before Officer Forry signed the DL-26 Form to record his finding that Licensee had refused consent. Further, she was never asked to sign the DL-26 Form. Accordingly, PennDOT did not meet its burden of proof, and the trial court erred in otherwise holding upon reconsideration.

Ironically, in its PA. R.A.P. 1925(a) opinion, the trial court agrees with Licensee, explaining, *inter alia*, that Licensee "did not make a refusal. She was asking questions that the officer was not answering in his haste to garner consent." Trial Court Op., 11/16/2020, at 7; R.R. 78. Further, Licensee

*credibly testified* that she was, at the same time that she was being processed on the [driving under influence], being presented with an unrelated warrant, which she stated she would pay the fine on. *It is clear to this Court that the statement about*

6

> *paying a fine was not directed at her DUI blood draw predicament.*

*Id.* (emphasis added). The trial court concluded that asking questions of the officer for a few minutes "does not strike this Court as a refusal." *Id.* at 9; R.R. 80. The trial court described PennDOT's legal position on what constitutes a refusal to consent as "tantamount to railroading." *Id.* at 10; R.R. 81. The trial court concluded its opinion with the observation that if PennDOT has correctly summarized "current jurisprudence" in this area of law, then this Court should revisit that jurisprudence. *Id.*

PennDOT argues that Officer Forry had no obligation to answer Licensee's questions or to ensure that she understood the DL-26 Form. A licensee's asserted "confusion" does not excuse the licensee from the obligation to give an unequivocal assent. Further, a licensee's change of mind will not vitiate a refusal. Relying on *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013), PennDOT argues that Licensee's conduct manifested a refusal to consent and, thus, her subsequent assent was of no moment.

The law is clear "(1) that the question of whether a licensee has refused to submit to a chemical test is one of law based upon facts found by the trier of fact, and (2) that anything less than an unqualified, unequivocal assent to a request to submit to a chemical test constitutes a refusal." *McDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998). In *McDonald,* we held that a licensee's questions to the arresting officer about her rights over a period of 10 to 15 minutes did not constitute a refusal, particularly given the licensee's confusion. Thereafter, in *McKenna*, we held that the licensee's repeated requests to speak to an attorney and for an explanation of the penalties over a period of eight minutes in a hospital room, while the phlebotomist waited,

7

constituted a refusal. Notably, the licensee had been repeatedly advised that any answer other than "yes" would constitute a refusal. The licensee acknowledged that he did not consent to a blood test until after the officer escorted him from the hospital to the patrol car outside the hospital. In *McKenna*, we relied upon *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636 (Pa. Cmwlth. 2016) (3 readings of the DL-26 Form followed by 12 minutes of silence constituted a refusal).

*McKenna* may have refined *McDonald*, in that the licensee's confusion about the DL-26 Form does not relieve the licensee of the requirement to give consent while still in the presence of the phlebotomist. However, *McDonald* remains good law, and it held that putting questions to an officer over a 15-minute period does not, in itself, constitute a refusal, particularly where the licensee began to sign the DL-26 Form while continuing her questions about calling an attorney. It is also the law that this Court does not make factual findings. *Reinhart v. Department of Transportation, Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). Rather, we determine whether a licensee has refused chemical testing "under the facts found by the trial court [and] not under the testimony [PennDOT] prefers." *Id.* at 765-66 (quoting *McDonald*, 708 A.2d at 156).

Here, the trial court credited the testimony of both Officer Forry and Licensee. The trial court specifically credited Licensee's explanation of her "pay the fine" statement to the officer. Stated otherwise, the trial court rejected the officer's inference that Licensee's statement about the fine communicated a refusal. We also are bound by the trial court's finding that Licensee's very next communication to the officer was an unequivocal assent to the blood test. Based on the factual findings of the trial court, PennDOT did not prove a lack of consent by

8

Licensee simply because she put several questions to the officer over the course of a three- to five-minute colloquy.[3]

To be sure, the arresting officer need not spend time "cajoling the defendant" to take the blood test or wait to see if she will change her mind and agree to a blood test. *Appeal of Miller*, 470 A.2d 213, 214 (Pa. Cmwlth. 1984) (repeated refusals to take a breathalyzer test not vitiated by a change of mind 20 minutes later). Here, the trial court found Licensee never expressed a refusal, but she did express consent. The questions posed by Licensee over a brief period of time did not manifest a "general unwillingness" to consent, *Walkden*, 103 A.3d at 440, and our jurisprudence does not sanction "railroading," as feared by the trial court.

For the above stated reasons, we reverse the trial court's order granting reconsideration and dismissing Licensee's appeal.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Judge Wallace did not participate in the decision in this case.

---

[3] Based on this conclusion, we need not address Licensee's second issue, *i.e.*, that PennDOT did not prove that Licensee was given the DL-26 Form to sign or a reasonable opportunity to consent.

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amischa Moody,              :
            Appellant       :
                            :
    v.                      :      No. 855 C.D. 2020
                            :
Commonwealth of Pennsylvania, :
Department of Transportation, :
Bureau of Driver Licensing  :

# **O R D E R**

AND NOW, this 22nd day of March, 2022, the order of the Court of Common Pleas of York County (trial court) entered July 10, 2020, in the above-captioned matter is REVERSED, and the matter is REMANDED for reinstatement of the trial court's order entered June 24, 2020.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita

Amischa Moody,                              :
                    Appellant              :
                                           :
         v.                                :
                                           :
Commonwealth of Pennsylvania,              :
Department of Transportation,              :    No. 855 C.D. 2020
Bureau of Driver Licensing                 :    Submitted: August 13, 2021


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

DISSENTING OPINION
BY JUDGE COVEY                                    FILED:  March 22, 2022


Respectfully, I disagree with the Majority's conclusion: "The questions posed by [Amischa Moody (]Licensee[)] over a brief period of time did not manifest a "general unwillingness" to consent[.]" *Moody v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth. No. 855 C.D. 2020, filed Mar. 22, 2022), slip op. at 9.  The record evidence reveals that Licensee was asked whether she would submit to a blood test four times, and four times she did not assent.  Because the law is clear that anything less than an unequivocal assent is a refusal, and a later assent does not vitiate a refusal, I would affirm the York County Common Pleas Court's (trial court) order.

On November 17, 2019, Northern York County Regional Police Officer Kyle Forry (Officer Forry) received a dispatch at 3:03 a.m. about reckless driving.  He located the reported vehicle parked in front of a residence, occupied, with its lights on, and the engine running.  Officer Forry woke Licensee, the sole occupant of the vehicle, and found that she smelled of alcohol and had bloodshot, glassy eyes.  He requested that Licensee exit the vehicle and he conducted standardized field sobriety tests.

Officer Forry concluded that Licensee failed the tests, and transported her to central booking, where she was immediately taken to a phlebotomist.

Officer Forry read the Commonwealth of Pennsylvania, Department of Transportation's (DOT) Form DL-26 warnings (Form DL-26)[1] to Licensee, and asked Licensee if she would consent to a blood test. After a few seconds of no response, Officer Forry repeated the question. Licensee responded that she needed time to think. Officer Forry testified that he allowed her more time to think. When Officer Forry again asked Licensee to submit to a blood draw, she responded that she wished to read the Form DL-26. After giving Licensee time to read the Form DL-26, Officer Forry asked Licensee, for the fourth time, whether she would submit to the blood draw. Licensee responded that she would *take the fine*.[2] Officer Forry stated that he deemed that a refusal and walked out of the room. As Officer Forry was leaving the room, Licensee stated she would take the test. Officer Forry then signed the Form DL-26 in two places. The first signature confirmed that he read the Form DL-26 to Licensee. The second signature confirmed that Licensee refused to sign the Form DL-26 or to consent to chemical testing.

The sole issue before this Court is whether Licensee refused chemical testing.

> "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, . . . 130 A.3d 738, 748 (Pa. 2015); *see also Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 281 (Pa. Cmwlth. 2018). **The question of refusal by a licensee to consent to chemical testing "turn[s] on a**

---

[1] The DL-26 warnings are the warnings established pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), part of what is commonly referred to as the Implied Consent Law.

[2] When asked what she meant when she said she would pay the fine, Licensee responded: "[T]hey had brought someone that said [she] couldn't leave until [she] had a ticket [sic], a fire hydrant ticket, and that [she] couldn't leave until [she] signed a paper." Reproduced Record at 40.

**consideration of whether the [licensee's] <u>overall conduct</u> demonstrates an unwillingness to assent to an officer's request for chemical testing.**" *Nardone*, 130 A.3d at 749.

*Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 496-97 (Pa. Cmwlth. 2018) (bold and underline emphasis added).

> Pennsylvania courts have long and consistently held that **<u>anything less</u> than an unqualified, unequivocal assent to submit to chemical testing constitutes a refusal to consent thereto**. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, . . . 669 A.2d 934, 939 (Pa. 1996); *see also McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294 (Pa. Cmwlth. 2013) (licensee's questioning police regarding consequences of refusal and refusing to sign consent form constituted refusal to consent to chemical testing); *Hudson v. Dep't of Transp., Bureau of Driver Licensing*, 830 A.2d 594 (Pa. Cmwlth. 2003) (repeated interruption and aggressive behavior while being read warnings constituted a refusal to consent to chemical testing). Further, **an explicit refusal is not required to find a licensee refused to consent to chemical testing**; "a licensee's conduct may constitute a refusal." *Park*, 178 A.3d at 281; *see also Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (a general unwillingness to submit to testing demonstrated by a licensee's overall conduct demonstrated a refusal to consent to chemical testing).

*Factor*, 199 A.3d at 497 (bold and underline emphasis added).

Here, Officer Forry asked Licensee *four separate times* whether she would consent to a blood draw. At no point did Licensee "assent to submit to chemical testing." *Park*, 178 A.3d at 281. Rather, she asked for time to think and to read the Form DL-26, which Officer Forry permitted. Further, it was not until after the fourth time Officer Forry asked her whether she would submit to testing that Licensee said she would pay the fine, which Officer Forry took as a refusal. In fact, Licensee did not say she would take the test until Officer Forry was leaving the room. Because Officer

Forry testified that Licensee did not make an unqualified, unequivocal assent to chemical testing, DOT proved Licensee refused chemical testing. *Park*.

> Specifically, Officer Forry testified:
>
> Once in front of the phlebotomist, I read [Licensee] the [Form] DL-26 [], which is the consent to legal blood draw. Upon reading the form verbatim, I asked her if she was willing to comply with the [Form DL-26] and give legal blood [sic]. She remained silent for a few seconds, so I asked her a second time. She advised she needed more time to think, so I allowed her more time to think.
>
> After a few more seconds, I asked her again[,] for a third time[,] if she would like to submit to a blood test. She said that she would like to read the [Form DL-26]. I handed her the [Form DL-26] and allowed her ample time to read the [Form DL-26].
>
> After completing reading of the [Form DL-26] [sic], I asked her a fourth and final time if she would like to, at which point she told me she would take the fine . . . .

Reproduced Record (R.R.) at 24-25.[3]

> On cross-examination, Licensee related:
>
> Q. [Licensee], Officer Forry testified that he asked you four times to take the test. Is that consistent with your recollection?
>
> A. He may have, sir.
>
> Q. After the first time he asked you, did you say yes, I will take the test?
>
> A. Could you ask that one more time, please?

---

[3] Licensee's Reproduced Record fails to comply with the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. 2173 ("[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc."). However, for consistency of reference, the citations herein are as reflected in the Reproduced Record.

Q.  **After the first time that he asked you** to take the chemical test, **did you say yes**, I will take the test?

A.  **No**, **sir**.  I asked questions.

Q.  **After the second time he asked you**, **did you say yes**, I will take the test?

A.  I asked questions.

Q.  So that's a no?

A.  I asked him questions.  I didn't say I wouldn't take it.

Q.  Did you say yes, I will take the test?

A.  **I did not**.

Q.  **After the third time he asked you**, **did you say yes**, I will take the test?

A.  **I did not**.  I had questions.

Q.  **After the fourth time he asked you**, **did you say yes**, I will take the test?

A.  I had questions.  **I did not**.

. . . .

THE COURT:  When did you say you would take the test?

[LICENSEE]:  I mean, he said he was going to take that as a refusal, and then I said I'll give you blood. . . .

R.R. at 42-43 (emphasis added).

Section 1547(a) of the Vehicle Code, commonly referred to as the Implied

Consent Law, provides:

**Any person who drives**, operates or is in actual physical control of the movement of a vehicle in this Commonwealth **shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance** if a police officer has reasonable grounds to believe the person to have been

driving, operating or in actual physical control of the movement of a vehicle in violation of [Vehicle Code S]ection[s] 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under [the] influence of alcohol or [a] controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa.C.S. § 1547(a) (emphasis added).

The Pennsylvania Supreme Court has declared:

Driving in Pennsylvania is a civil privilege conferred on state residents who meet the necessary qualifications. Under the terms of the Implied Consent Law, one of the necessary qualifications to continuing to hold that privilege is that a motorist must submit to chemical sobriety testing when requested to do so, in accordance with the prerequisites of the Implied Consent Law, by an authorized law enforcement officer. The obligation to submit to testing is related specifically to the motorist's continued enjoyment of the privilege of maintaining his operator's license.

*Dep't of Transp., Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 544 (Pa. 1996) (citation omitted).

[W]hether a motorist's conduct constitutes a refusal to submit to chemical testing is a question of law. In addressing this issue, **we have consistently held that "anything substantially less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so**. [*Renwick*, 669 A.2d at 938]; *Lanthier v. Dep['t] of Transp[.]*, *Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011); *Miele v. Commonwealth*, . . . 461 A.2d 359, 360 ([Pa. Cmwlth.] 1983).

*McKenna*, 72 A.3d at 298 (emphasis added; citation omitted). The law is well established:

**A licensee need not explicitly refuse to submit to testing but may demonstrate through his overall conduct a general unwillingness to submit to testing**. Officers are not required to "spend effort either cajoling the licensee or spend time waiting to see if the licensee will ultimately change his

AEC - 6

> mind." *Broadbelt v. Dep[’t] of Transp[.], Bureau of Driver Licensing*, 903 A.2d 636, 641 n.7 (Pa. Cmwlth. 2006).

*Walkden*, 103 A.3d at 440 (emphasis added; citations omitted); *see also Factor*, 199 A.3d at 497 ("[A]n explicit refusal is not required to find a licensee refused to consent to chemical testing[.]"); *Park*, 178 A.3d at 281 ("[A] licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal."); *McKenna* (After being advised he would lose his license if he did not consent, and being read the Form DL-26, rather than give a yes or no response, the licensee continued to ask questions. This Court deemed licensee's conduct a refusal.).

Here, DOT presented Officer Forry who testified that he asked Licensee four times whether she would submit to a blood test, and four times she did not say yes. Clearly, Licensee "demonstrate[d] through her overall conduct a general unwillingness to submit to testing." *Walkden*, 103 A.3d at 440. Accordingly, DOT proved that Licensee refused chemical testing.

"Moreover, . . . this Court has consistently held that once a licensee refuses chemical testing, the refusal cannot be vitiated by a later assent." *Vora v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 743, 747 (Pa. Cmwlth. 2013); *McKenna* (After the arresting officer deemed the licensee's failure to assent a refusal, he walked the licensee to the police car, at which time the licensee said he would take the test. This Court held that the subsequent assent did not vitiate the refusal.). Here, it was not until after Officer Forry had asked her four times to take the test, to which **Licensee admitted she did not give her assent**, and as Officer Forry was leaving the room, that Licensee stated that she would take the blood test. Because Licensee did not assent after being asked four times whether she would take the test, her later assent did not vitiate her refusal. Once DOT proved that Licensee had refused chemical testing, "the burden shift[ed] to [] [L]icensee to prove she was physically incapable of performing the test or that her refusal was not knowing and conscious." *Park*, 178 A.3d at 280.

Licensee did not present any evidence to prove her refusal was not knowing and conscious. As Licensee did not meet her burden of proving that her refusal was not knowing and conscious, I would affirm the trial court's order and uphold DOT's suspension of Licensee's license.


_____
ANNE E. COVEY, Judge