John P. McKENNA

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 21, 2012.
Decided May 24, 2013.
Publication Ordered July 23, 2013.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellant.

Kevin M. Zlock, Langhorne, for appellee.

BEFORE: McGINLEY, Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from the July 13, 2012 order of the Court of Common Pleas of Bucks County (trial court) sustaining the appeal of John P. McKenna (Licensee) from an 18–month suspension of his operating privilege imposed by DOT pursuant to section 1547(b) of the Vehicle Code.[1] We reverse.

On August 18, 2011, Officer Christopher Windish (Officer Windish) of the Buckingham Township Police Department responded to a minor, two-vehicle traffic accident in which Licensee's vehicle had rear-ended another vehicle at a stoplight. (Reproduced Record (R.R.) at 15a–16a.) Officer Windish detected a strong odor of alcohol coming from Licensee's breath and his eyes appeared glassy. (R.R. at 16a.) Licensee admitted to Officer Windish that he was operating his vehicle at the time of

1. 75 Pa.C.S. § 1547(b).

the accident and that he had been drinking that night. (R.R. at 16a, 20a–21a.) Officer Windish administered field sobriety tests to Licensee, and based upon these tests, Officer Windish concluded that Licensee was incapable of driving safely and placed him under arrest for driving while under the influence of alcohol or controlled substance (DUI). (R.R. at 16a–17a.)

Officer Windish transported Licensee to Doylestown Hospital, informed Licensee that he was under arrest for DUI, and requested that he submit to a blood test. (R.R. at 17a.) Officer Windish told Licensee that if he refused the test, he could lose his license for 12 to 18 months and face possible jail time and fines. (*Id.*) Licensee expressed confusion over his rights, believing that he had a right to an attorney because he was under arrest, and Officer Windish read the DL–26 Form to him.[2] (R.R. at 19a, 30–32a.) After Officer Windish read him the form, Licensee asked Officer Windish questions regarding what penalties he could face if he refused

the test and why he could not speak to an attorney before deciding whether to take the test. (R.R. at 26a, 34a.) Licensee did not agree to submit to a blood test while he was in a hospital room with a phlebotomist, but continued to ask those questions. (R.R. at 22a.) Approximately eight minutes after arriving at the hospital, Officer Windish deemed Licensee's actions a refusal to submit to the test, and Officer Windish and Licensee exited the hospital. (R.R. at 24a–25a, 36a, 108a; Findings of Fact (F.F.) No. 8.)

When Officer Windish and Licensee returned to the police car, Licensee stated that he would take the blood test. (R.R. at 22a–23a.) About two to three minutes had elapsed between Licensee's questioning about the DL–26 Form in the hospital and when Licensee agreed to take the test. (R.R. at 24a.) Office Windish did not bring Licensee back into the hospital for the phlebotomist to administer the blood test. (R.R. at 24a–25a.)

2.  The DL–26 Form, document number two in DOT's Exhibit C–1 (R.R. at 50a.), contains the implied consent warnings required by section 1547 of the Vehicle Code, 75 Pa.C.S. § 1547, pursuant to our Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989). Officer Windish read the warnings in paragraphs one through four to Licensee verbatim, which provide:

> 1.  You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
> 2.  I am requesting that you submit to a chemical test of blood.
> 3.  If you refuse to submit to the chemical test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test, and you are convicted of violating Section 3802(a)(1) (relating to

impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail and a maximum fine of $10,000.00.

> 4.  You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test, resulting in the suspension of your operating privilege and other enhanced criminal sanctions if you are convicted of violating Section 3802(a) of the Vehicle Code.

(R.R. at 18a–19a.)

After receiving notice that Licensee refused to submit to chemical testing, DOT mailed him a notice on September 1, 2011, advising that his driving privilege was being suspended for 18 months, effective October 6, 2011, pursuant to section 1547(b)(1)(h) of the Vehicle Code.[3] Licensee filed a timely appeal, and, on April 9, 2012, the trial court held a *de novo* hearing. (R.R. at 12a, 15a.)

At the hearing, Officer Windish testified that he deemed Licensee's behavior at the hospital a refusal to submit to the blood test. (R.R. at 17a.) He stated that Licensee did not give him a yes-or-no answer even after he read Licensee the DL–26 Form. (*Id.*) Officer Windish testified that Licensee continued to ask questions after being repeatedly advised that any answer other than "yes" would be deemed a refusal. (R.R. at 24a–25a.) Officer Windish testified that after he handcuffed Licensee and walked him to the police car, Licensee stopped and said he would take the test. (R.R. at 23a–24a.) Officer Windish also stated that he did not bring Licensee back into the hospital for the blood test because he believed that he only had to give Licensee one opportunity to agree to the blood test, and he had already given Licensee multiple opportunities. (R.R. at 25a.)

Licensee testified that even though he was read the warning that advised him that he had no right to speak to an attorney, he was still confused. (R.R. at 30a, 33a.) Licensee stated that he did not receive satisfactory answers as to why he could not speak to an attorney or what the additional criminal penalties would be if he refused the test. (R.R. at 33a.) Licensee testified that even after he agreed to take the test, he still did not know why he was not allowed to have an attorney and did not know what additional criminal penalties were referenced in the DL–26 Form. (R.R. at 35a.) Licensee also testified that he never said that he would not take the test and was silent or asking questions during the time he was in the hospital. (R.R. at 37a–38a.) However, Licensee acknowledged that he did not agree to take a blood test before he left the hospital. (R.R. at 37a.)

By order dated July 13, 2012, the trial court sustained Licensee's appeal. The trial court first determined that "[t]he issue in this case is not whether [Licensee's] subsequent assent to take the test vitiates his prior refusal; but rather, whether his actions at the Doylestown Hospital constitute a refusal in the first instance."[4] (Trial court op. at 6, R.R. at 131a.)

The trial court then determined that Licensee's conduct did not constitute a refusal, but, rather, his questioning of Officer Windish was a legitimate attempt to clarify

---

**3.** Section 1547(b)(1)(ii) provides that if any person placed under arrest for DUI is requested to submit to a chemical test and refuses to do so, DOT shall suspend the person's operating privilege for a period of 18 months if the person has previously been sentenced for DUI. 75 Pa.C.S. § 1547(b)(1)(ii). Licensee was sentenced to a one-year suspension of his license in 1991 for DUI. (R.R. at 56a.).

**4.** Indeed, the law is well-settled that once a licensee has refused, the refusal cannot be vitiated by a later assent. *Cunningham v. Department of Transportation,* 105 Pa.Cmwlth. 501, 525 A.2d 9 (1987) (holding that, once the licensee refused, the refusal was not vitiated

by an assent 5 minutes after the refusal, regardless of the short amount of time between the refusal and the assent). *See also, King v. Department of Transportation, Bureau of Driver Licensing,* 828 A.2d 1 (Pa.Cmwlth.2002) (holding that a licensee who initially refuses to submit to a breath test and then asks to take the test is subject to penalties for refusal); *Department of Transportation, Bureau of Driver Licensing v. Tomczak,* 132 Pa.Cmwlth. 38, 571 A.2d 1104 (1990) (holding that a licensee's refusal to take a breathalyzer test is not vitiated by his request to take the test moments later).

his rights. The trial court specifically found Licensee's testimony credible, noting that DOT did not dispute that Licensee asked questions with respect to his rights after being read the DL–26 Form and that he never explicitly refused to take the test. (R.R. at 108a–09a.) The trial court also noted that Officer Windish did not fully and directly answer Licensee's questions. (R.R. at 108a.) Relying on *McDonald v. Department of Transportation, Bureau of Driver Licensing*, 708 A.2d 154 (Pa. Cmwlth.1998), the trial court found that Licensee was not merely stalling or misleading Officer Windish, but was genuinely confused and seeking clarification of his rights in connection with agreeing to submit to the blood test. (R.R. at 116a.) The trial court held that, therefore, DOT failed to establish the requirements necessary to suspend Licensee's operating privilege.

DOT appeals to this Court,[5] arguing that the trial court erred as a matter of law in holding that Licensee had not refused chemical testing. Specifically, DOT argues that the trial court erred in concluding that Licensee's confusion excused the fact that "[Licensee] did not give an unequivocal assent to Officer Windish's initial request for chemical testing." (Trial court op. at 6.)

■ We note initially that in order to sustain an 18–month suspension of a licensee's operating privilege under section 1547 of the Vehicle Code, DOT must establish that: (1) the licensee was arrested for DUI by a police officer who had reasonable grounds to believe that the licensee was operating a motor vehicle while under the influence of alcohol; (2) the licensee was requested to submit to a chemical test;

(3) the licensee refused to submit; (4) the licensee was warned that refusal would result in a license suspension; and (5) the licensee was subject to one of the statutory provisions that enhances the suspension from 12 months to 18 months. *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 21–22 (Pa. Cmwlth.2010); *Broadbelt v. Department of Transportation, Bureau of Driver Licensing*, 903 A.2d 636, 640 (Pa.Cmwlth.2006). In sustaining Licensee's suspension, the trial court found that DOT satisfied all but one element, specifically, that Licensee refused to submit to a chemical test.

■ As finder of fact, the trial court is the sole arbiter of questions concerning the credibility and weight of the evidence, and the trial court's determinations in these respects will not be disturbed unless the trial court abuses its discretion. *Stancavage v. Department of Transportation, Bureau of Driver Licensing*, 986 A.2d 895 (Pa.Cmwlth.2009). However, whether a motorist's conduct constitutes a refusal to submit to chemical testing is a question of law. *Hudson v. Department of Transportation, Bureau of Driver Licensing*, 830 A.2d 594, 599 (Pa.Cmwlth.2003). In addressing this issue, we have consistently held that "anything substantially less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so. *Department of Transportation v. Renwick*, 543 Pa. 122, 131, 669 A.2d 934, 938 (1996); *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa.Cmwlth.2011); *Miele v. Commonwealth*, 75 Pa.Cmwlth. 130, 461 A.2d 359, 360 (1983).

---

5. Our scope of review is limited to determining whether the findings of fact are supported by competent evidence or whether the trial court committed an error of law or an abuse of discretion in reaching its decision. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704; *Piasecki v. Department of Transportation, Bureau of Driver Licensing*, 6 A.3d 1067, 1070 (Pa.Cmwlth.2010).

DOT argues that the trial court's reliance on *McDonald* was misplaced and that Licensee's failure to make an unqualified, unequivocal assent to Officer Windish's request for a blood test constituted a refusal of chemical testing. We agree.

In *McDonald*, after the licensee was arrested for DUI, the police officer requested that she submit to chemical testing and handed her the DL–26 Form. He recited it aloud while the licensee read it. Subsequently, the officer deemed the licensee's behavior to be a refusal and, accordingly, DOT suspended her license for refusing to submit to testing. The licensee appealed. At the hearing, the licensee testified that after reading the DL–26 Form, she was confused and asked the officer some questions concerning the distinction between civil and criminal proceedings and her right to an attorney. *While she was signing the consent form,* the licensee continued to ask the officer questions and the officer took the form away from her twice. The licensee was able to sign the first two letters of her first name on the form before the officer gained sole possession of it. The officer testified that he believed that the licensee was just "playing" with him.

The trial court resolved all conflicts in the evidence against the officer and specifically found the testimony of the licensee credible. The trial court found that the licensee was confused by the language on the form; that she agreed to take the blood test by attempting to sign the form; and that she was willing to provide a blood sample. On appeal, this Court affirmed the trial court's determination, concluding that the licensee's testimony, as found credible by the trial court, proved that she did not refuse the test.

■ The circumstances presented in *McDonald* are readily distinguishable from the facts here. Unlike the licensee in *Mc-*

*Donald,* Licensee did not assent to Officer's Windish's request for blood while at the hospital. During that time period, Licensee did not attempt to sign the DL–26 Form, nor did he give any indication that he agreed to submit to testing. Furthermore, whereas the police officer in *McDonald* took the form away from the licensee as she was signing it, here, Officer Windish gave Licensee the form, read it to him, and did not interfere with his opportunity to sign it. Licensee never agreed to sign the form, never attempted to sign it, and never agreed to submit to testing. Thus, the trial court's reliance on *McDonald* was misplaced.

In *Renwick,* our Supreme Court held that a licensee's conduct that demonstrates a general unwillingness to submit to testing constitutes a refusal. In doing so, the Court noted that the established law provides that anything less than a licensee's unqualified, unequivocal assent to submit to chemical testing is a refusal. *Renwick,* 543 Pa. at 131, 669 A.2d at 938. Here, Licensee's conduct at the hospital displayed an unwillingness to consent and was accurately described by the trial court as a failure to give an unequivocal, unconditional assent to submit to testing.

Our court has consistently followed the holding in *Renwick.* For example, in *Broadbelt* a licensee was arrested for DUI. The arresting officer read the licensee the DL–26 Form twice, and, when requested, he gave the licensee the form to read on his own for a third time. The officer asked the licensee three times to submit to a chemical test, but the licensee did not answer, and after 12 minutes passed without a response, the officer deemed the licensee's conduct a refusal. Thereafter, DOT suspended his license. The trial court affirmed DOT's suspension of the licensee's operating privilege based on his refusal to submit to testing, and the licen-

see appealed, arguing that he did not have enough time to properly understand the form and make a decision. This Court affirmed the suspension, holding that the licensee's conduct evidenced a refusal to take the test and that he was given a meaningful opportunity to comply with the request for chemical testing.

In *Department of Transportation, Bureau of Traffic Safety v. Wroblewski*, 65 Pa.Cmwlth. 333, 442 A.2d 407 (1982), after being arrested for DUI, the licensee insisted on waiting for his attorney before submitting to testing. The police officer recorded this as a refusal to take the test. When the licensee's attorney arrived a few minutes later, the licensee agreed to take the test, but the officer replied that it was too late. DOT suspended the licensee's operating privilege and licensee appealed to the trial court, which sustained the licensee's appeal. DOT appealed, and this Court reversed and reinstated the suspension, holding that the licensee's initial failure to unconditionally agree to testing was a refusal and was not vitiated by his later assent. In doing so, we reasoned that "time is of the essence in administering breath tests, due to the volatile nature of the evidence to be obtained, and the public interest in ascertaining violators of section 3731[DUI] is so compelling as to justify a very strict application of the law." *Id.* at 409. *See also Tomczak.*[6]

Furthermore, "this court has long held that 'police officers are not required to spend effort either cajoling the [licensee] or spend time waiting to see if the [licensee] will ultimately change his mind.'" *Broadbelt*, 903 A.2d at 641 n. 7 (quotations and citations omitted); *Garner v. Department of Transportation, Bureau of Driver Licensing*, 879 A.2d 327, 331 (Pa.Cmwlth. 2005); *King v. Department of Transportation, Bureau of Driver Licensing*, 828 A.2d 1, 5 n. 8 (Pa.Cmwlth.2002); *Department of Transportation, Bureau of Traffic Safety v. Mumma*, 79 Pa.Cmwlth. 108, 468 A.2d 891, 893 (1983).

■ In *Broadbelt*, we held that before a refusal may be recorded, an officer must fulfill his affirmative duty to convey to a licensee the certainty of a suspension upon his or her refusal to submit to a chemical test, but we emphasized that police officers have no duty to ensure that a licensee understands the consequences of refusing a chemical test. In *Garner*, we recognized that licensees often fail to readily appreciate the difference between the civil suspension for failure to submit to testing and the penalties imposed upon conviction for DUI; nevertheless, we held that the DL–26 Form does not generate confusion, adequately and accurately informs a licensee that a request for counsel will be treated as a refusal for purposes of a license suspension, and contains sufficient informa-

**6.** In *Tomczak*, the licensee was arrested for DUI and informed three times that his license would be suspended for failure to submit to a breathalyzer test. The licensee refused to take the test, then, within moments after his refusal, requested to take the test. DOT suspended his operating privilege based on his initial refusal. The licensee appealed and, at the hearing, testified that he was nervous and did not fully understand that his refusal to submit to testing would result in a loss of his operating privilege. *Tomczak*, 571 A.2d at 1105. The trial court sustained the licensee's appeal, holding that the licensee should have

been given an opportunity to take the test. DOT appealed to this Court.

This Court reversed the trial court, holding that the licensee refused the test after being informed of the consequences. In so holding, we explicitly refused to allow a licensee's alleged confusion, even if legitimate, to apply to every case in which a licensee is confused over his rights and the consequences of refusal. *Id.* at 1107. We also determined that the licensee's request to take the test moments after his refusal was irrelevant because we have long held that a subsequent assent does not vitiate a prior refusal. *Id.* at 1108.

tion upon which a licensee can base a decision as to whether to submit to testing.[7]

Thus, Officer Windish had no duty to answer Licensee's questions to Licensee's satisfaction or spend time ensuring that Licensee fully comprehended the DL–26 Form, and Officer Windish fulfilled his obligation once he read that form to Licensee. Accordingly, whether Officer Windish adequately answered Licensee's questions and whether Licensee was legitimately confused as to his rights are irrelevant, and the trial court erred in relying on these factors to hold that DOT failed to meet its burden of proof.

Contrary to the trial court's conclusion, DOT satisfied its burden of establishing the required elements to sustain an 18–month suspension of Licensee's operating privilege. Once DOT fulfilled this obligation, the burden shifted to Licensee to establish that he was not capable of making a conscious and knowing refusal to submit to chemical testing. *Lanthier*, 22 A.3d at 348–49. Licensee does not argue that he was incapable of making a conscious and knowing refusal. Therefore, DOT's suspension was proper.

Accordingly, we reverse the trial court's order and reinstate DOT's imposition of an 18–month suspension of Licensee's operating privilege.

### ORDER

AND NOW, this 24th day of May 2013, the July 13, 2012 order of the Court of Common Pleas of Bucks County is reversed and the Department of Transportation's 18–month suspension of John P. McKenna's operating privilege is reinstated.

---

**7.** In *King*, 828 A.2d at 5, we declined to revisit these "well-settled principles" and rejected the licensee's assertion that such principles are "fundamentally unfair." In *Mumma*, 468 A.2d at 893, we noted that "[t]he statute requires only that the arresting officer relate the consequences of refusal to the motorist, who is then free to choose his course of action."