# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Lositski, : 
                       Appellant : 
                     : 
               v. : No. 878 C.D. 2018
                     : Submitted: May 3, 2019
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**          **FILED: July 18, 2019**

     Denise Lositski (Licensee) appeals from the May 23, 2018 Order of the Court of Common Pleas of Lackawanna County (common pleas) dismissing her appeal from a one-year suspension of her operating privilege imposed by the Commonwealth of Pennsylvania, Department of Transportation (DOT), Bureau of Driver Licensing (Bureau) pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. § 1547(b)(1)(i), commonly referred to as the Implied Consent Law.[1] On

---

[1] Section 1547(b)(1)(i) of the Vehicle Code reads, in pertinent part, as follows:

(1)    If any person placed under arrest for violation of section 3802 [(relating to driving under the influence of alcohol or controlled substance)] is required to submit to chemical testing and refuses to do so, the testing shall not be conducted

appeal, Licensee avers common pleas "erred when it found that [Licensee] was adequately warned of the consequences of a refusal to submit to chemical testing because it was clear that [Licensee] did not understand the warnings." (Licensee's Brief (Br.) at 11.) Specifically, Licensee argues she "did not knowingly refuse consent to a chemical test" when she asked questions regarding the *O'Connell* warnings[2] and that common pleas erred by finding she refused consent. (*Id.* at 10.) Licensee contends she asked questions in an attempt to understand the warnings, not to delay the process or to refuse testing. Additionally, Licensee avers common pleas erred by not determining whether Licensee knowingly refused a chemical test of her blood.

On January 18, 2018, Licensee was arrested for driving under the influence (DUI) and subsequently transported to the Lackawanna DUI Center. At the DUI Center, Chief Chris Tolson read Licensee the warnings contained in DOT Form DL-26B verbatim. The warnings in Form DL-26B, commonly referred to as the *O'Connell* warnings or the Implied Consent warnings, read, in pertinent part, as follows:

1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.

2. I am requesting that you submit to a chemical test of blood.
3. If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused

---

but upon notice by the police officer, [DOT] shall suspend the operating privilege of the person as follows:
      (i)     Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. § 1547(b)(1)(i).
[2] *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989).

a chemical test or were previously convicted of driving under the influence, you will be suspended for up to 18 months.

4. You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.

(Reproduced Record (R.R.) at 8.) After being read the foregoing, Licensee asked a series of questions regarding her right to legal counsel and the consequences for refusing the blood test. Chief Tolson asked Licensee several times whether she would submit to a blood test, and each time Licensee responded with a question. Chief Tolson eventually treated Licensee's repeated questions as a refusal to consent to the blood test and terminated his interview with Licensee. Thereafter, by letter dated February 23, 2018, DOT suspended Licensee's operating privilege for a period of one year pursuant to Section 1547(b)(1)(i) of the Vehicle Code for Licensee's refusal to submit to the blood test on January 18, 2018. (*Id.* at 11.)

Licensee appealed the suspension to common pleas, which held a hearing on the matter on May 18, 2018. At the hearing, Officer Thomas Richardson, a patrolman for Dunmore Police Department, testified. Officer Richardson testified that he observed Licensee operating a vehicle on North Blakely Street, Dunmore, Lackawanna County, Pennsylvania, and proceed straight through an intersection even though she was driving in a left turn lane. Officer Richardson testified that Licensee was stopped by a fellow officer. Officer Richardson stated that when he arrived at the scene he engaged Licensee and observed that her speech was slurred. After making this observation, Officer Richardson asked Licensee to exit the vehicle to perform field sobriety tests. Officer Richardson testified that at this point he asked Licensee "if she had any type of medical issues or anything, [to] which she replied

3

no." (Hr'g Tr. at 6, Record (R.) Item 9.) Officer Richardson then had Licensee perform a horizontal gaze nystagmus test and concluded Licensee lacked "smooth pursuit in both eyes." (Hr'g Tr. at 8.) Officer Richardson next asked Licensee to perform a one-legged stand, to which Licensee responded that she could not perform due to a medical problem. Officer Richardson testified that based upon his observations, Licensee was DUI. Officer Richardson then placed Licensee under arrest, and Licensee was transported to the DUI Center.

After Officer Richardson testified, common pleas viewed the video recording of Licensee's interaction with Chief Tolson[3] at the DUI Center and summarized it as follows:

> Upon [Licensee's] arrival at the DUI Center, she was met by Chief Tolson of the Processing Center. On more than one occasion, Chief Tolson clearly advised [Licensee] that there was a camera and a microphone in the room to record the proceeding. He repeated the adviso and she claimed that she was unable to "process" what he was saying. Chief Tolson then proceeded to give [Licensee] the *O'Connell* Warnings as stated in the DL-26B Form . . . . Chief Tolson, again on more than one occasion, asked [Licensee] if she was going to submit to a blood test. [Licensee] repeatedly requested to know the consequences if she refused which was clearly explained to her. At one point, [Licensee] wanted to have the consequences in writing, at which time Chief Tolson gave her the Warnings to read. Again, Chief Tolson asked her if [she] was going to submit to a blood test and on each occasion, she kept avoiding the question and interjecting another inquiry. She continuously asked why she was not entitled to a Lawyer and Chief Tolson appropriately responded that she was not.

(Common pleas' Opinion (Op.) at 5.) After common pleas viewed the video, counsel for Licensee rested without presenting testimony from Licensee or any other witnesses. In his closing, counsel for Licensee argued that Licensee was not given "a meaningful presentation of her rights" because Chief Tolson was "monotone"

---

[3] Chief Tolson did not testify at the May 18, 2018 hearing before common pleas.

4

when reading Form DL-26B and because Licensee was given only a "very cursory explanation of rights which were very important to [Licensee]." (Hr'g Tr. at 20, 22.) DOT responded by arguing that police officers have a duty to give the *O'Connell* warnings, but do not have a duty to ensure that a licensee understands the warnings. At the close of the hearing, common pleas informed the parties it was going to dismiss the appeal. Thereafter, on May 23, 2018, common pleas entered an Order denying Licensee's appeal.

In its Opinion filed pursuant to Pennsylvania Rule of Appellate Procedure 1925(a), Pa.R.A.P. 1925(a), common pleas, relying on the video recording of Licensee at the DUI Center, found that:

> It was clear to this Court that [Licensee], intentionally or otherwise, continued to delay the process, at which point, the process was terminated and rightfully recorded as a refusal . . . . Any alleged confusion on the part of [Licensee] was clearly self-inflicted and not the result of the communication. The *O'Connell* Warnings were communicated to her in a clear and concise fashion. Chief Tolson clearly informed [Licensee] of the Implied Consent Warnings and gave her more than a meaningful opportunity to comply with the Implied Consent Law.

(Common pleas' Op. at 5-6.) Common pleas concluded that Licensee's "failure to respond to the chemical test requests and her repeated questions were rightfully determined to be a refusal." (*Id.* at 6.)

On appeal,[4] Licensee avers common pleas erred by finding Licensee was "adequately warned of the consequences of a refusal to submit to chemical testing." (Licensee's Br. at 11.) Licensee also contends that she did not knowingly refuse to

---

[4] "Our standard of review is whether [common pleas'] findings are supported by competent evidence and whether [common pleas] committed an error of law or an abuse of discretion." *Drudy v. Dep't of Transp., Bureau of Driver Licensing*, 795 A.2d 508, 510 n.5 (Pa. Cmwlth. 2002).

consent to the blood test and that common pleas erred in concluding she had refused the test. Specifically, Licensee argues she did not understand the *O'Connell* warnings and was asking questions in an attempt to understand the warnings, not to delay the process or to refuse consent. Additionally, Licensee cites to the language in common pleas' Opinion that reads "[Licensee], intentionally or otherwise, continued to delay the process," (Common pleas' Op. at 5), to argue her refusal was unintentional and that common pleas erred by not determining whether her refusal was knowing.

DOT responds by arguing common pleas "correctly found that [Licensee] failed to satisfy her burden of proof that she was incapable of making a knowing and conscious decision to refuse chemical testing because she purportedly did not understand the Implied Consent warnings." (DOT's Br. at 4.)

We begin by noting that in order to sustain an operating privilege suspension under Section 1547(b) of the Vehicle Code, DOT has the burden of demonstrating Licensee:

> (1) was arrested for DUI by a police officer with reasonable grounds to believe [Licensee] was operating a vehicle under the influence of alcohol or a controlled substance; (2) was requested to submit to chemical testing; (3) refused to submit to chemical testing; and (4) was warned by the officer that her license will be suspended if she refused to submit to chemical testing.

*Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 280 (Pa. Cmwlth. 2018). Once DOT has demonstrated the foregoing, the burden then shifts to Licensee to demonstrate that she was physically unable to take the blood test or that her refusal of the blood test was not knowing and conscious. *Id.* "The determination of whether a licensee was able to make a knowing and conscious

6

refusal is a factual one that is to be made by the trial court." *Kollar v. Dep't of Transp., Bureau of Driver Licensing*, 7 A.3d 336, 340 (Pa. Cmwlth. 2010). A licensee's testimony that she was unable to make a knowing and conscious decision to refuse a blood test "is insufficient to meet the licensee's burden of proof." *Id.* While not a per se rule, "[m]edical testimony is generally required in order to establish a licensee was unable to provide a knowing and conscious refusal to submit to chemical testing." *Id.* A licensee cannot rely on voluntary intoxication to meet the licensee's burden of proof that the licensee was unable to make a knowing and conscious decision to refuse testing. *Id.*

In reviewing this matter, we are guided by the well-established principle "that it is not the province of this Court to make new or different findings of fact." *Reinhart v. Dep't of Transp., Bureau of Driver Licensing*, 954 A.2d 761, 765 (Pa. Cmwlth. 2008). Our role is to review common pleas' findings "to determine if they are supported by substantial, competent evidence." *Id.* If common pleas' findings are supported by substantial evidence, "we are precluded from overturning those findings." *Id.* We have previously defined the term "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Helwig v. Dep't of Transp., Bureau of Driver Licensing*, 99 A.3d 153, 159 (Pa. Cmwlth. 2014). When reviewing the evidence, we must do so in a light most favorable to DOT, the party that prevailed before common pleas. *See Bradish v. Dep't of Transp., Bureau of Driver Licensing*, 41 A.3d 944, 945 n.3 (Pa. Cmwlth. 2012). Further, "[d]eterminations as to the credibility of witnesses and the weight assigned to the evidence are solely within the province of the trial court as fact-finder." *Reinhart*, 954 A.2d at 765.

7

Turning to Licensee's arguments, Licensee first argues common pleas erred by finding she was "adequately warned of the consequences of a refusal to submit to chemical testing." (Licensee's Br. at 11.) We disagree. Section 1547(b) of the Vehicle Code requires police officers, when requesting a licensee submit to a blood test, to warn the licensee, among other things, that refusal may result in suspension of the licensee's operating privilege for a minimum of 12 months. 75 Pa. C.S. § 1547(b). This warning is included in Form DL-26B. We have previously held that reading this form "is sufficient as a matter of law to meet the warning requirement under Vehicle Code Section 1547(b)." *Quigley v. Dep't of Transp., Bureau of Driver Licensing*, 965 A.2d 349, 354 (Pa. Cmwlth. 2009).

In *Quigley*, the licensee was arrested for DUI and asked to submit to chemical testing. The arresting officer read the licensee the warnings in Form DL-26, to which the licensee responded by stating she did not want to take the chemical test. After being notified by the Bureau that her operating privilege was suspended for a period of one year, the licensee appealed the suspension to the Court of Common Pleas of Allegheny County. Before that court, the licensee argued she had not "been properly warned that her operating privileges would be suspended []" if she refused to submit to the chemical test. *Id.* at 351. The court dismissed the licensee's appeal finding "that she had been properly warned." *Id.* On appeal to this Court, the licensee argued the court erred in concluding she was properly warned of the consequences of refusal because Form DL-26 was ambiguous and confusing. We concluded that Form DL-26 is sufficient to apprise a licensee of the consequences of refusing a chemical test as required by Section 1547(b) of the Vehicle Code. *Id.* at 354; *see also Dep't of Transp., Bureau of Driver Licensing v. Weaver*, 912 A.2d 259, 264-65 (Pa. 2006).

8

Upon examination of the record, we conclude common pleas' finding that Licensee was given the *O'Connell* warnings in a clear and concise manner is supported by substantial evidence. The video recording of Licensee at the DUI Center clearly shows Chief Tolson reading Licensee the warnings contained in Form DL-26B verbatim, which fulfilled Chief Tolson's duty to warn Licensee of the consequences of refusal under Section 1547(b) of the Vehicle Code. *Quigley*, 965 A.2d at 354.

To the extent that Licensee argues that she was not adequately warned of the consequences of refusal because she did not understand the warnings, police officers have no duty to ensure that licensees understand the *O'Connell* warnings or to answer questions in an attempt to help licensees understand the warnings. *McKenna v. Dep't of Transp., Bureau of Driver Licensing,* 72 A.3d 294, 300-01 (Pa. Cmwlth. 2013). In *McKenna*, the licensee was arrested for DUI following an accident and was subsequently transported to the hospital. On the way to the hospital, the arresting officer requested the licensee to submit to a blood test and read him Form DL-26. In response, the licensee asked the officer several questions regarding the consequences for not consenting and whether he could speak to his attorney before deciding whether to consent. The arresting officer deemed the licensee's questions to be a refusal. Later, after being discharged from the hospital, the licensee told the arresting officer that he would submit to the blood test, which the officer did not allow. Thereafter, the Bureau notified the licensee that his operating privilege was suspended for a period of 18 months. The licensee appealed the suspension to the Court of Common Pleas of Bucks County, which concluded the Bureau did not establish the necessary elements to suspend the licensee's operating privilege. Specifically, it found that licensee had not refused to submit to the blood test, that

9

his questions were an attempt to understand the warnings, and that the questions were not a refusal. On appeal, we reversed, concluding that officers have no duty to ensure that a licensee understands the *O'Connell* warnings or to answer a licensee's questions in an attempt to help the licensee understand the warnings. *Id.* at 301. We held that the arresting officer had fulfilled his duty to warn the licensee of the consequences of refusal by reading Form DL-26 to the licensee and that the licensee's repeated questions constituted a refusal. *Id.* Thus, here, Chief Tolson fulfilled his duty by reading Licensee Form DL-26B and had no duty to answer Licensee's questions in an attempt to help her understand the *O'Connell* warnings.

Licensee also argues common pleas erred by finding Licensee refused the blood test. "The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). The question of whether a licensee refuses consent to a chemical test turns on whether the licensee's "overall conduct demonstrates an unwillingness to assent to an officer's request for chemical testing." *Id.* at 749. We have previously held that a refusal to submit to a chemical test "is anything substantially less than an unqualified, unequivocal assent." *Lanthier v. Dep't of Transp., Bureau of Driver Licensing*, 22 A.3d 346, 348 (Pa. Cmwlth. 2011) (quoting *Dep't of Transp., Bureau of Traffic Safety v. Mumma*, 468 A.2d 891, 892 (Pa. Cmwlth. 1983)). "A licensee's refusal need not be expressed in words; a licensee's conduct may constitute a refusal to submit to testing." *Bomba v. Dep't of Transp., Bureau of Driver Licensing*, 28 A.3d 946, 949 (Pa. Cmwlth. 2011). As stated above, a licensee's repeated, unyielding questions when asked to submit to a blood test constitute a refusal to take the test. *McKenna*, 72 A.3d at 300-01.

Upon examination of the record, we conclude common pleas' finding that Licensee interjected repeated questions each time Chief Tolson asked her to submit to a blood test is supported by substantial evidence. The video recording clearly shows Chief Tolson asking Licensee multiple times whether she would submit to a blood test, and each time she asked questions regarding the warnings, her right to an attorney, and inquiring of the consequences if she refused to submit. As such, we cannot conclude common pleas committed an error of law by finding Licensee's repeated questions were a refusal of the blood test because our precedent establishes that such repeated questioning constitutes a refusal. *Id.*

Licensee does not challenge the first two elements DOT is required to demonstrate in order to sustain its operating privilege suspension against Licensee. Because Licensee refused the test and was warned of the consequences thereof, which are the remaining elements, as held by common pleas, DOT has met its burden to sustain the suspension. *See Park,* 178 A.3d at 280.

The burden then shifts to Licensee to demonstrate that her refusal was not knowing. *Id.* Licensee argues she did not knowingly refuse to submit to the blood test because she did not understand the *O'Connell* warnings and that common pleas erred by not determining whether her refusal was knowing. From the transcript of the May 18, 2018 hearing, it does not appear Licensee raised this issue before common pleas. Failure to raise this issue before common pleas results in waiver of the issue on appeal. Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a). To the extent that Licensee has not waived this issue, she presents no theory or evidence to support the notion that her refusal was not knowing. Licensee contends that she did not understand the *O'Connell* warnings; however, Licensee's

statement that she does not understand the warnings is not sufficient to meet her burden of demonstrating her refusal was not knowing, *Kollar*, 7 A.3d at 340.

Licensee also argues, citing the "intentionally or otherwise" language from common pleas' Opinion, that common pleas erred by not determining whether her refusal was knowing. Licensee argues that if her "delay was not intentional[,] it follows it was unintentional. [Licensee] unintentionally delayed the process because she did not understand the warnings." (Licensee's Br. at 12.) Licensee's reliance on this language in common pleas' Opinion is unclear. Just because Licensee may have unintentionally refused the test by asking questions does not make her refusal not knowing. As stated above, Licensee's statement that she asked questions because she did not understand the *O'Connell* warnings is not sufficient to demonstrate her refusal was not knowing. Further, directly after the "intentional or otherwise" language, common pleas states that "[a]ny alleged confusion on the part of [Licensee] was clearly self-inflicted and not the result of the communication." (Common pleas' Op. at 6.) The implication of this sentence is that common pleas believed, to the extent that Licensee was unable to understand the warnings, her inability to understand was due to her intoxication. As stated above, Licensee cannot use intoxication to meet her burden of demonstrating that her refusal was not knowing. *Kollar*, 7 A.3d at 340. Therefore, we cannot conclude common pleas erred when Licensee, who did not testify at the hearing before common pleas, has not provided any theory or evidence to demonstrate that her refusal to consent to the blood test was not knowing.

Accordingly, for the foregoing reasons, we affirm the May 23, 2018 Order of common pleas denying Licensee's appeal of a one-year suspension of her operating privilege.

12

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Denise Lositski,                          :
                 Appellant      :
                                :
              v.                          :      No. 878 C.D. 2018
                                :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing               :

# **O R D E R**

     **NOW**, July 18, 2019, the Order of the Court of Common Pleas of Lackawanna County dated May 23, 2018, is **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER,** Judge