IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Edward Overcash,                  :
                        Appellant       :
                                        :
        v.                              : No. 200 C.D. 2022
                                        :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing              : Submitted: October 10, 2023

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                         FILED:  November 30, 2023

        Brian Edward Overcash (Licensee) appeals from the January 27, 2022 Order
of the Court of Common Pleas of York County (Trial Court) dismissing his statutory
appeal and reinstating the 18-month suspension of his operating privilege imposed
by the Department of Transportation, Bureau of Driver Licensing (DOT).  DOT
imposed the suspension under Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa.
C.S. § 1547(b)(1)(ii), commonly known as the Implied Consent Law,[1] due to

---

[1] Section 1547(b)(1)(ii) of the Implied Consent Law states:

(1) If any person placed under arrest for a violation of [S]ection 3802 [of the
Vehicle Code, 75 Pa. C.S. § 3802 (relating to driving under the influence of alcohol
or a controlled substance (DUI)),] is requested to submit to chemical testing and
refuses to do so, the testing shall not be conducted but upon notice by the police
officer, [DOT] shall suspend the operating privilege of the person . . .


        . . . .

        (ii) For a period of 18 months if any of the following apply:
**(Footnote continued on next page…)**

Licensee's refusal to submit to chemical testing in connection with his arrest for DUI. We affirm.

## Background

On July 6, 2021, DOT notified Licensee that his operating privilege would be suspended for 18 months, effective August 10, 2021, due to his refusal to submit to chemical testing on June 23, 2021. DOT Br., App. A. Licensee filed a statutory appeal with the Trial Court on August 3, 2021.

The Trial Court initially scheduled a *de novo* hearing on October 12, 2021. Licensee requested a continuance because his counsel was unavailable on that date, and the Trial Court granted the request.

The Trial Court convened a hearing on November 23, 2021, at which time DOT requested a continuance because its witness was not present. Notes of Testimony (N.T.), 11/23/21, at 2. Licensee's counsel objected, stating that Licensee "was opposed to the [Trial] Court granting [DOT's] request for a continuance. [Licensee is] here. He's prepared. He's ready to proceed." *Id.* at 3-4. DOT's counsel responded:

---

> (A) The person's operating privileges have previously been suspended under this subsection.
>
> (B) The person has, prior to the refusal under this paragraph, been sentenced for:
>
>> (I) an offense under [S]ection 3802;
>> (II) an offense under former [S]ection 3731;
>> (III) an offense equivalent to an offense under subclause (I) or (II); or
>> (IV) a combination of the offenses set forth in this clause.

75 Pa. C.S. § 1547(b)(1)(ii). Licensee was previously convicted of DUI under Section 3802 of the Vehicle Code on November 16, 2004. *See* DOT Br., App. A.

2

[Licensee's] privilege is restored pending this appeal. I'm not making light of the time that he had to come in this morning, . . . if he had to miss work, I'm not making light of that. But other than that, there is no real prejudice to [Licensee] to continue this matter, and to sustain the appeal of an 18-month suspension is a significant penalty to [DOT] for its witness whom we did notify and who[m] I did remind with an email at a regular email address that I've communicated with this officer before about the hearing does seem to be an extreme reaction, but we leave that to the discretion of the [Trial] Court.

*Id.* at 4. The Trial Court granted DOT's continuance request, concluding:

We are aware of the time and inconvenience of having [Licensee] and his counsel here this morning. As far as this matter goes, *this would be []DOT's first request for a continuance. We previously granted the request for continuance made by* [*Licensee*] *here due to his counsel's unavailability on the date and time.*

[Licensee] does have a stay of his suspension while this matter is pending as well as what is at risk as far as the suspension itself. *I believe the interest of justice requires a continuance.*

*Id.* at 5 (emphasis added). The Trial Court then asked Licensee's counsel whether Licensee would prefer to reconvene on the court's next regular hearing date, December 30, 2021, or on January 27, 2022. *Id.* Licensee's counsel requested January 27, 2022, and the Trial Court continued the matter to that date.

The Trial Court convened the *de novo* hearing on January 27, 2022. Officer Joshua Phillips testified on DOT's behalf. Licensee was present but did not testify or present any evidence.

Officer Phillips testified that he had six years' experience as a police officer with the Hellem Township Police Department. N.T., 1/27/22, at 5. Officer Phillips received specific training in DUI investigations and estimated that he had been involved in "60 to 70 plus DUIs." *Id.*

3

On the evening of June 23, 2021, Officer Phillips initiated a traffic stop of Licensee's vehicle, in a posted 40-mile-per-hour zone, because the vehicle "appeared to be moving at a high rate of speed for th[e] area." *Id.* at 6. Officer Phillips approached the vehicle from the passenger side and observed Licensee "with a distant stare." *Id.* at 7. Officer Phillips testified: "When I knocked on the window, [Licensee] was staring straight ahead. He appeared to have glassy eyes from where I was standing on the passenger side." *Id.* The officer asked Licensee if he had been drinking, and he replied that he had "two drinks with dinner." *Id.*

Officer Phillips testified that he performed a horizontal gaze nystagmus (HGN) test on Licensee[2] and observed "four out of the six clues," indicating that Licensee was "over the legal limit in . . . Pennsylvania" of a .08 blood alcohol content. *Id.* at 14-16. While performing the HGN test, the officer was standing "close to" Licensee and "smell[ed] an odor of alcoholic beverage coming from him."

_____

[2] Licensee initially objected to Officer Phillips' testimony regarding the HGN test, stating that the officer was not "qualified as an expert in the area of ophthalmology to indicate whether or not he believed that there was impairment based on [Licensee's] perceived or purported reactions to the stimulus." N.T., 1/27/22, at 8. DOT's counsel agreed that he "did not ask [Officer Phillips] about his training and experience with field sobriety" and stated he would "certainly . . . do that." *Id.* Officer Phillips then testified regarding his training and experience in conducting field sobriety tests, and the HGN test in particular. *Id.* at 9-14. Licensee's counsel again objected, stating:

> I have heard that [Officer Phillips] has training with respect to standardized field sobriety tests; but no specific mention of th[e HGN] test in particular and why, other than his experience as a police officer, . . . he's in a position to testify as to what, if anything, that means as it relates to whether or not there are reasonable grounds to suspect that [Licensee was] driving under the influence. The correlation is where I see the record lacking.

*Id.* at 11. In response to this objection, the Trial Court clarified: "I think factually [Officer Phillips] can testify as to what he saw, and I don't think there's any expertise required to do that." *Id.* at 12-13. Licensee's counsel agreed. *Id.* at 13. Officer Phillips then testified regarding his performance of the HGN test, and Licensee's counsel made no further objections.

*Id.* at 16. Officer Phillips also asked Licensee to perform the walk-and-turn and one-leg-stand tests, but Licensee said that he had "a bad ankle," so the officer did not perform those tests. *Id.* Officer Phillips then asked Licensee to count backwards from 67, to which Licensee replied that "he worked hard and he had a few drinks." *Id.* at 17. Licensee refused to submit to a portable breath test at the scene, after which Officer Phillips took him "into custody for suspicion of DUI." *Id.*

Officer Phillips transported Licensee to the York County Sheriff's Office for a blood test. *Id.* While the officer was reading the implied consent warnings from DOT's DL-26B Form[3] to Licensee, just before the last warning, Licensee "repeated over and over again that he wanted to speak to his attorney." *Id.* at 17-18. The officer then asked Licensee if he understood that if he continued to ask for an attorney, it would be deemed a refusal, but Licensee did not respond. *Id.* at 18. After reading all four DL-26B Form warnings to Licensee, Officer Phillips asked him to submit to a blood test. *Id.* at 19-20. Licensee replied that "he wanted to speak to his attorney," which the officer deemed a refusal. *Id.* at 20. Licensee refused to sign the DL-26B Form. *See* DOT Br., App. A.[4]

At the conclusion of the hearing, the Trial Court dismissed Licensee's appeal and reinstated the 18-month suspension of his operating privilege. N.T., 1/27/22, at 48-49. The Trial Court first addressed Licensee's "contention that if th[e] traffic stop is not valid, [then] everything that flows from it is also not to be considered." *Id.* at 44. After reviewing relevant Pennsylvania precedent, the Trial Court

---

[3] The DL-26B Form contains the implied consent warnings required to be given when a police officer requests a chemical test of a licensee's blood.

[4] Officer Phillips testified that he mistakenly signed his name on the line labeled "Signature of Operator" in addition to the line labeled "Signature of Officer." N.T., 1/27/22, at 19; *see* DOT Br., App. A.

determined that "the issue of the underlying traffic stop that leads to the interaction in question here is not something which I am to examine and determine whether or not there were sufficient grounds for it or not." *Id*. at 44-45. Rather, the relevant inquiry is "whether the driver was arrested for DUI by a police officer with reasonable grounds to believe the licensee was operating a vehicle while under the influence of alcohol or a controlled substance." *Id.* at 45.

As to reasonable grounds, the Trial Court made the following findings and conclusions:

> [T]he officer just has to have reasonable grounds to believe the driver was operating the vehicle while under the influence of alcohol or controlled substance. *Clearly Officer Phillips did credibly testify that he saw* [*Licensee*] *operate the vehicle. . . .*
>
> . . . [Licensee] admitted that he had two drinks at dinner. The questions of how long ago was dinner, what did he eat, what kind of beverages were they, are questions that go to what his blood alcohol level might be at the time, and that's not the examination the [Trial] Court is to make. *The examination the* [*Trial*] *Court is to make is whether* [*Licensee*] *was under the influence of alcohol or a controlled substance, not the amount that he was under the influence.* Later in the encounter [Licensee] stated, "I work hard and I had a few drinks." A few drinks now being a little different than two. *I believe based on those admissions alone, and the fact that* [*Licensee*] *was observed driving a motor vehicle,* [*DOT*] *has established the first part of the test.* Again, the standard here is not criminal in nature, it's not beyond a reasonable doubt, it's a preponderance of the evidence.
>
> With respect to the remaining three points which [DOT] must prove, they are contained within the DL-26B [Form], though candidly, Officer Phillips signed the form at the wrong place. In the middle of the form the officer also included an affidavit in the form and properly completed the affidavit, which states that [Licensee] was placed under arrest for [DUI], and he was requested to submit to a blood test. "The above operator was read by a police officer the chemical test warnings

6

contained in paragraphs 1 through 4 above. The operator refused to submit to a blood test after having been read the warnings." The warnings clearly indicate, . . . "if you request to speak with an attorney or anyone else after being provided these warnings, or you remain silent when asked to submit to a blood test, you will have refused the test."

> [*Licensee*] *was told that a request to speak with an attorney was the equivalent of a refusal. His response when requested to submit to the test was that he wanted to speak with his attorney. Again, the warning is right there that that is the equivalent of a refusal.*

> *Because I found that [DOT] here has met [its] burden, again by a preponderance of the evidence of showing the four elements required to uphold a suspension based on a chemical test refusal, I have to dismiss the appeal . . . and reinstate the suspension.*

*Id.* at 46-48 (emphasis added). Licensee now appeals from that decision.[5]

## Analysis

Before this Court, Licensee asserts that the Trial Court: (1) abused its discretion in granting DOT's request for a continuance over Licensee's objection, when DOT offered no explanation for Officer Phillips' failure to appear on the first hearing date; (2) erred in considering evidence illegally obtained in violation of Article I, Section 8 of the Pennsylvania Constitution; and (3) erred in finding that Licensee refused chemical testing.

### 1. Continuance Request

First, Licensee argues that the Trial Court improperly granted DOT's request for a continuance on November 23, 2021, over Licensee's objection, because DOT offered no explanation as to why Officer Phillips failed to appear on that date.

---

[5] Our review of a Trial Court order sustaining a license suspension under the Implied Consent Law is limited to determining whether the Trial Court's findings are supported by competent evidence and whether the Trial Court committed an error of law or abused its discretion. *McKenna v. Dep't of Transp., Bureau of Driver Licensing*, 72 A.3d 294, 298 n.5 (Pa. Cmwlth. 2013).

Licensee asserts that DOT did not make the request until two hours after the scheduled start time, and Licensee had retained private counsel and incurred additional expenses as a result of the continuance being granted.

It is well settled that "[t]he decision to grant a continuance is exclusively within the discretion of the trial court, and this Court will not disturb the trial court's determination in the absence of an apparent abuse of discretion." *Com. v. Lutz*, 618 A.2d 1254, 1255 (Pa. Cmwlth. 1992). To establish an abuse of discretion, the licensee must show "'not merely an error of judgment,'" but that "'the law [was] overridden or misapplied, or the judgment exercised [was] manifestly unreasonable or the result of partiality, prejudice, bias, or ill will.'" *Sitoski v. Dep't of Transp., Bureau of Driver Licensing*, 11 A.3d 12, 22 (Pa. Cmwlth. 2010) (citation omitted).

We conclude that the Trial Court acted well within its discretion in granting DOT's continuance request. The Trial Court considered several factors in granting the request, including that the suspension of Licensee's operating privilege had been stayed pending appeal and that Licensee had previously been granted a continuance due to his counsel's unavailability. Trial Ct. Op., 3/25/22, at 2-3 (unpaginated). The Trial Court found that while Licensee may have been inconvenienced by DOT's request, he would not suffer any prejudice. *Id.* at 3-4. Moreover, when given the opportunity to move the hearing to either December 30, 2021, or January 27, 2022, *Licensee* chose the later date. *Id.* at 4. Under these circumstances, we conclude that the Trial Court did not abuse its discretion in granting the continuance.

### 2. Exclusionary Rule

Next, Licensee argues that the Trial Court erred in considering evidence obtained in violation of his right to be free from unreasonable searches and seizures

8

under Article I, Section 8 of the Pennsylvania Constitution.[6] Specifically, Licensee contends that "the seizure of [Licensee] and his vehicle was illegal because the police did not have reasonable suspicion of criminal activity or probable cause of a [V]ehicle [C]ode violation." Licensee Br. at 1; *see id.* at 13, 16. Licensee urges this Court to adopt the exclusionary rule,[7] which has historically been applied only in criminal cases, because he contends that a license suspension proceeding is "quasi-criminal" in nature and imposes "punishment." *Id.* at 14.

Contrary to Licensee's contention, however, this Court has consistently held that "the result of a criminal DUI proceeding and *the legality of the underlying traffic stop are not relevant to an appeal of a civil license suspension matter* based on a licensee's refusal to submit to a chemical test." *Regula v. Dep't of Transp., Bureau of Driver Licensing*, 146 A.3d 836, 843 (Pa. Cmwlth. 2016) (some emphasis removed; other emphasis added); *see also Sitoski*, 11 A.3d at 21 ("Our [c]ourts have consistently held that a licensee may not seek civil remedies, i.e., the reversal of a license suspension, where the licensee's rights as a criminal defendant have been compromised."); *Kachurak v. Dep't of Transp., Bureau of Driver Licensing*, 913 A.2d 982, 986 (Pa. Cmwlth. 2006) ("The law is clear that the legality of the

---

[6] Article I, Section 8 of the Pennsylvania Constitution states: "*The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures*, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Const. art. I, § 8 (emphasis added).

[7] The exclusionary rule, which was first recognized under the Fourth Amendment to the United States Constitution, "bars the use of evidence obtained through an illegal search and seizure." *Com. v. Arter*, 151 A.3d 149, 153 (Pa. 2016). The exclusionary rule in Pennsylvania arises under Article I, Section 8 of the Pennsylvania Constitution and "has consistently served to bolster the twin aims of Article I, Section 8[:] . . . the safeguarding of privacy and the fundamental requirement that warrants shall only be issued upon probable cause." *Com. v. Edmunds*, 586 A.2d 887, 899 (Pa. 1991).

underlying DUI arrest is of no moment in a license suspension that results from a refusal to submit to chemical testing. *It is irrelevant whether [the officer] had probable cause for executing the traffic stop*.") (emphasis added).

Moreover, this Court has explained:

> The standard of reasonable grounds to support a license suspension [under the Implied Consent Law] is akin to the reasonable suspicion standard of the Fourth Amendment [to the United States Constitution]. The basis for the exclusionary rule in Fourth Amendment situations is to deter police officials from engaging in improper conduct for the purpose of obtaining criminal convictions. As discussed above, *license suspensions are civil, not criminal proceedings.* As we noted in *Boseman*[ *v. Department of Transportation, Bureau of Driver Licensing*, 157 A.3d 10 (Pa. Cmwlth. 2017)], *the U[nited States] Supreme Court has not extended the Fourth Amendment's exclusionary rule to proceedings other than criminal trials*.

*Marchese v. Dep't of Transp., Bureau of Driver Licensing*, 169 A.3d 733, 740-41 (Pa. Cmwlth. 2017) (internal citations omitted) (emphasis added).

In light of this binding precedent, we conclude that the Trial Court correctly declined to apply the exclusionary rule in this civil license suspension proceeding.[8]

### 3. Licensee's Refusal

Finally, Licensee challenges the Trial Court's finding that he refused chemical testing. Licensee asserts that the evidence establishes that his overall conduct did not demonstrate an unwillingness to submit to a blood test, but was merely an attempt to understand his legal rights. He also asserts that "DOT failed to provide evidence clarifying if [his] alleged 'refusal' was in connection with the [DL-26B]

---

[8] In his Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal, Licensee also separately asserted that the Trial Court erred in concluding that Officer Phillips had reasonable grounds to request chemical testing based on the evidence presented at the hearing. *See* DOT Br., App. E. However, Licensee has abandoned this claim in his appellate brief, so we will not address it.

Form, or the testing itself." Licensee Br. at 20. Thus, Licensee contends that "DOT failed to demonstrate an independent basis for the refusal 'apart from [Licensee] exercising [his] acknowledged right not to sign a superfluous form.'" *Id.* (quoting *Petrocsko v. Dep't of Transp., Bureau of Driver Licensing*, 745 A.2d 714, 718 (Pa. Cmwlth. 2000)). We disagree.

To sustain the suspension of a licensee's operating privilege for refusing to submit to chemical testing, DOT must prove that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol or a controlled substance; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension. *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). In proving that a licensee refused chemical testing, DOT must show that the licensee was offered a meaningful opportunity to comply with the Implied Consent Law. *Petrocsko*, 745 A.2d at 716.

"The question of whether a licensee refuses to submit to a chemical test is a legal one, based on the facts found by the trial court." *Nardone v. Dep't of Transp., Bureau of Driver Licensing*, 130 A.3d 738, 748 (Pa. 2015). Our Supreme Court has held that "'any response from a licensee that is *anything less than an unqualified, unequivocal assent to submit to testing* constitutes a refusal.'" *Id.* (citation omitted) (some quotations marks removed) (emphasis added); *accord Factor v. Dep't of Transp., Bureau of Driver Licensing*, 199 A.3d 492, 497 (Pa. Cmwlth. 2018) ("Pennsylvania courts have long and consistently held that *anything less than an unqualified, unequivocal assent* to submit to chemical testing constitutes a refusal to consent thereto.") (emphasis added). However, "an explicit refusal is not required

11

to find a licensee refused to consent to chemical testing; 'a licensee's conduct may constitute a refusal.'" *Factor*, 199 A.3d at 497 (citation omitted).

Here, Officer Phillips testified that while he was reading the implied consent warnings to Licensee, Licensee stated that he wanted to speak to his attorney. N.T., 1/27/22, at 17-18. The DL-26B Form read to Licensee included the following warning:

> You have no right to speak with an attorney or anyone else before deciding whether to submit to testing. *If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to a blood test, you will have refused the test.*

DOT Br., App. A (emphasis added). Rather than consent to a blood test, Licensee "repeated over and over again that he wanted to speak to his attorney." N.T., 1/27/22, at 18. The officer asked Licensee if he understood that if he continued to ask for an attorney, it would be deemed a refusal; Licensee did not respond, instead stating, after the warnings were read to him, that "he wanted to speak to his attorney." *Id.* at 19-20. Based on this uncontroverted evidence, we conclude that Licensee did not provide an "unqualified, unequivocal assent" to chemical testing as required by our case law.

Licensee relies on this Court's decision in *Petrocsko* for the proposition that DOT may only prevail if it demonstrates a basis for Licensee's refusal other than his insistence on not signing the DL-26B Form. In *Petrocsko*, the arresting officer asked the licensee if he would consent to a blood test, and he said yes. However, at the hospital, when he was asked to sign a consent form releasing the hospital from liability, the licensee refused, and the officer recorded a refusal. On appeal, this Court held that DOT failed to prove that the licensee actually revoked his earlier

unequivocal assent to the blood test, as opposed to merely refusing the test if, as a precondition, he was also required to sign the consent form. We concluded:

> DOT's burden in proving a refusal includes proof that *if [the l]icensee consents to undergo the chemical test even if only verbally, and then is subsequently presented with some other requirement, e.g., the signing of a form (be it a form from the hospital or the police) and the [l]icensee refuses to comply with that requirement, and a refusal is recorded, the burden is on DOT to prove that the licensee in fact revoked his prior consent* to undergo the chemical test as opposed to merely refusing to comply with the additional requirement which is not authorized by the Vehicle Code.

*Petrocsko*, 745 A.2d at 717. In other words, the licensee was not given a meaningful opportunity to respond to the request for a chemical test because the officer placed an extraneous condition, unrelated to the Implied Consent Law, on the test.

We conclude that *Petrocsko* is factually distinguishable from this case because, in that case, the licensee agreed to submit to a blood test before refusing to sign the consent form. Here, Licensee *never* assented to a blood test at any point in the process and, as explained above, refused to submit to the test by his conduct, i.e., repeatedly requesting an attorney. *See Dep't of Transp., Bureau of Driver Licensing v. Renwick*, 669 A.2d 934, 939 (Pa. 1996) (holding that while the licensee's failure to sign a consent form did not *per se* constitute a refusal to submit to chemical testing, her overall conduct nonetheless demonstrated a refusal that was not based solely on her refusal to sign the form).

Importantly, Licensee does not dispute that Officer Phillips read all of the warnings on the DL-26B Form to him, nor does he dispute that Officer Phillips informed him that if he continued to request an attorney, it would be deemed a refusal. Licensee's assertion that he was merely trying to clarify his rights by asking for an attorney is unavailing, *see* Licensee Br. at 19, because "police officers have

13

no duty to ensure that a licensee understands the consequences of refusing a chemical test." *McKenna*, 72 A.3d at 300; *see Grogg v. Dep't of Transp., Bureau of Driver Licensing*, 79 A.3d 715, 719 (Pa. Cmwlth. 2013). Furthermore, this Court has already determined that "the DL-26 Form *does not generate confusion, adequately and accurately informs a licensee that a request for counsel will be treated as a refusal for purposes of a license suspension*, and contains sufficient information upon which a licensee can base a decision as to whether to submit to testing." *McKenna*, 72 A.3d at 300-01 (emphasis added); *see Garner v. Dep't of Transp., Bureau of Driver Licensing*, 879 A.2d 327, 331 (Pa. Cmwlth. 2005).

Based on Officer Phillips' testimony, which the Trial Court credited, we conclude that DOT satisfied its burden of proving that Licensee refused to consent to a blood test. *See Park v. Dep't of Transp., Bureau of Driver Licensing*, 178 A.3d 274, 284 (Pa. Cmwlth. 2018) (as the factfinder in a license suspension appeal, the trial court determines both the credibility of witnesses and the weight assigned to the evidence, and its credibility determinations "will not be second-guessed on appeal"). We find no error in the Trial Court's conclusion that, by repeatedly requesting an attorney, Licensee communicated a refusal to submit to chemical testing.

### Conclusion

Accordingly, we affirm the Trial Court's Order.

_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brian Edward Overcash,          :
                  Appellant    :
                       :
      v.              :  No. 200 C.D. 2022
                       :
Commonwealth of Pennsylvania,  :
Department of Transportation,    :
Bureau of Driver Licensing       :

# **O R D E R**

AND NOW, this 30th day of November, 2023, the January 27, 2022 Order of the Court of Common Pleas of York County is hereby AFFIRMED.

_____
ELLEN CEISLER, Judge